THE STATE OF OHIO, APPELLEE, *v.* HULSEY, APPELLANT.

(No. 3268—Decided May 10, 1968.)

*Mr. John J. Heron,* city prosecutor, for appellee.
*Mr. Glen E. Mumpower,* for appellant.

CRAWFORD, P. J. The essential portion of the affidavit charging the offense of which defendant, appellant herein, was convicted by the court without a jury reads:

"* * * on or about the 25th day of January A. D., 1966,

in the city of Kettering, and in the county of Montgomery and in the state of Ohio, one Vergie Hulsey, 851 Orchard Drive, Kettering, Ohio, did telephone repeatedly the said Rose Catherine Schaeublin for the sole purpose of harassing the said Rose Catherine Schaeublin at 2624 Wehrly Drive, Kettering, Ohio, contrary to Section 4931.31 of the Ohio Revised Code * * *.''

The complainant, Schaeublin, and the defendant, Hulsey, were neighbors between whom there were long-standing differences. These arose over their children: the defendant says complainant's son played ball in defendant's yard and that complainant repeated to defendant certain scandal concerning the latter's fifteen-year-old daughter.

These differences reached a high pitch about June 7, 1964. According to complainant, defendant said ''she would make me pay''; immediately thereafter, complainant began receiving silent telephone harassing—that is, her telephone would ring, but when she answered no one would speak (for a time she followed the natural impulse to respond in kind); on occasion she would hear water running; during a certain period defendant's daughter talked to her, called her names and made fun of her; and she heard teenage giggling.'

Complainant said that on occasion her husband held the telephone receiver while she went into the street and saw the defendant; she did not say where defendant was or what she was doing. She indicated that on January 25 she received one call about 10:16 p. m. and another about 11:52 p. m.

Another neighbor, Martha Maurice, testified she received similar calls and could look out and see defendant using her telephone in the kitchen.

There is no positive or direct evidence that defendant personally made any of these calls.

According to the testimony, at complainant's request, the telephone company, by use of a pen register in its office, recorded the origin only, and nothing more, of numerous telephone calls emanating from defendant's telephone to complainant's. The particular call here in question was made on January 25, 1966, about 11:31 p. m.; the connection

was locked by a switch at the telephone company, and the police were notified. Police officers rang defendant's doorbell at approximately 11:32 p. m. The only light in the house was in the kitchen. About two minutes later, defendant emerged from the area of the kitchen. She claimed she had been in the basement, access to which is from the kitchen area. No one testified to observing defendant using the telephone on this occasion. Although the kitchen telephone was on the cradle, the officers lifted it and found it connected with complainant's telephone.

Also present in the house at the time were defendant's husband and the fifteen-year-old daughter. The husband said he had been asleep and was awakened by the doorbell; and he emerged from the bedroom partially clad. The daughter was in her bedroom, but was not interviewed by the officers.

These three members of defendant's family testified. Defendant denied the call and the harassing. The husband was apparently not using the telephone. He testified that he had listened to the eleven o'clock news; that at approximately 11:15 p. m. he instructed the daughter, who had been using the telephone, to settle down for the night; and that, thereupon, he proceeded to bed and to sleep.

The daughter testified that that evening between ten and eleven o'clock she had been calling a group of her friends about a party; that she occasionally dialed a wrong number, whereupon she would say nothing, but hang up; and that she did not intentionally dial complainant's number. On cross-examination she said that she used the telephone after her father had supposedly quieted her, around 11:15 p. m., and had no idea when she stopped using the telephone, or whom she had last called.

The first assignment of error is that not all the elements of the crime were proved, that specifically there was no evidence that the telephone company had published in its directory the warning required by Section 4931.31, Revised Code.

That statute forbids the use of a telephone either to threaten another or to use or address improper language

to another for the sole purpose of annoying him, or repeatedly calling in order to harass or molest him, and forbids the telephone company's willfully omitting from its directory a prescribed warning against such misuse. These offenses, by the user of the telephone on the one hand, and by the telephone company on the other, are clearly not interdependent. The first part of the section places upon the user an unqualified duty not to do what he is forbidden to do, regardless of the publication or failure to publish the warning.

The second assignment of error is the admission into evidence of the record of the pen register. This device recorded the numbers called from the telephone in defendant's residence, not the message, not the voice, and not the identity of the person making the call. It is contended, nevertheless, that this is a violation of the Federal Communications Act of 1934, Section 605, Title 47, U. S. Code; *United States* v. *Dote* (1966), 371 F. 2d 176.

In the *Dote case* the telephone company told the Internal Revenue Service of its suspicion that a certain telephone was being used for bookmaking purposes. That service thereupon installed a pen register without the knowledge or consent of either its sending or receiving subscribers. The results were used as leads by the service. The evidence so obtained was suppressed. The court indicated, nevertheless, that there were certain legitimate business uses for a pen register upon a subscriber's request.

Appellee cites the case of *Rathbun* v. *United States* (1957), 355 U. S. 107. This case held that:

"Contents of a communication overheard by police officers on a regularly used telephone extension, with the consent of the person who is both the subscriber to the extension and a party to the conversation, are admissible in a criminal trial in a federal court; because such use of a regularly used telephone extension does not involve any 'interception' of a telephone message as Congress intended that word to be used in Section 605 of the Federal Communications Act."

The opinion quotes these two portions of the statute:

"* * * no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. * * *"

"* * * no persons not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by wire or radio and use the same or any information therein contained for his own benefit or for the benefit of another not entitled thereto. * * *"

Following this latter quotation, the opinion comments:

"The clear inference is that one entitled to receive the communication may use it for his own benefit or have another use it for him. The communication itself is not privileged, and one party may not force the other to secrecy merely by using a telephone. It has been conceded by those who believe the conduct here violates Section 605 that either party may record the conversation and publish it. The conduct of the party would differ in no way if instead of repeating the message he held out his handset so that another could hear out of it. We see no distinction between that sort of action and permitting an outsider to use an extension telephone for the same purpose."

The court makes other comment upon the widespread use of extension telephones and the absence of any Congressional intent to place severe restrictions upon their use.

It seems but a short step from the receiver's use of his regular extension telephone to use by the telephone company at his request of a device which simply informs him of the identity of the calling number and nothing more, information to which he as a subscriber is surely entitled. Adapting the words of the statute, he is a "person * * * entitled" to "receive or assist in receiving any * * * communication." It is an essential element of a communication that the one receiving it know its origin. And if he is entitled to receive the communication, he has the right to publish and to use it and to have it published and used for his benefit.

In our opinion, the evidence of the pen register as to the identity of the sender, obtained at the receiver's request, is properly admissible in evidence.

We have not commented upon the applicability of the federal statute to local use, inasmuch as the cases seem to indicate that it is applicable by virtue of the interstate nature of the telephone system or installation.

The third assignment is that the finding of guilty was contrary to the manifest weight of the evidence.

The evidence showed conclusively that the call originated at the residence of defendant and her family. It would support any disciplinary action which might lawfully be taken with regard to future telephone service at that residence.

But, in our opinion, it fails in a criminal case to identify the defendant beyond a reasonable doubt as the person making the call or calls. She was not observed using the telephone. One of the officers testified that there was a two-minute interval between their ringing of the doorbell and defendant's appearance at the door, a sufficient time for defendant's husband to awaken, and emerge from his bedroom partially clad; and that she came from the area of the kitchen which is adjacent to the entrance to the basement, where she said she had been.

The husband said defendant did not to his knowledge use the telephone that evening. The daughter said defendant did use it once for a certain business call.

The daughter, on the other hand, exhibited a typical teenage addiction to the telephone. She had been making considerable use of the extension telephone in her bedroom that evening and admits calling some wrong numbers and remaining silent. She does not admit or deny calling the complainant, but says only that she did not do so intentionally. She states that she used the telephone later than 11:15, and after her father had supposedly quieted her for the night. This brings her use of the phone within the approximate time (11:31 p. m.) when the connection was locked. According to defendant's testimony that complainant had repeated certain scandal against the daughter, the lat-

ter had a motive for harassing the complainant, and had apparently called her in the past. Silent telephone harassment suggests a teenage mentality, or less. That does not necessarily eliminate the defendant, but is a fact to be considered.

With respect to the defendant charged, it is our opinion that the circumstances are as easily reconcilable with innocence of this and previous calls as it is with guilt, and that they are not inconsistent with a reasonable theory of innocence. 15 Ohio Jurisprudence 2d 636, 639, 764, Criminal Law, Sections 467, 469, 597.

In our opinion the finding of guilt beyond a reasonable doubt was contrary to the manifest weight of the evidence. The judgment of conviction will accordingly be reversed.

*Judgment reversed.*

SHERER, J., concurs.

KERNS, J., dissenting. This case lends some credence to Thurber's observation that "high fences make good neighbors," but, unlike the pestering that temporarily emanates from most neighborhood squabbles, harassment, in the form of hundreds of unwarranted telephone calls, matured into a way of life for the complainant herein.

In cases of this kind, the prosecution must necessarily rely to some extent upon circumstantial evidence, and the concomitant facts and circumstances of the present case, when coupled with the particular events occurring "on or about the 25th day of January," are sufficient, in my opinion, to sustain the conviction by the requisite degree of proof.