296 So.2d 243

## A. J. STALLWORTH

v.

## STATE.

I Div. 426.

Court of Criminal Appeals of Alabama.

June 4, 1974.

Chestnut, Sanders, Sanders & Forte, Selma, for appellant.

William J. Baxley, Atty. Gen., Montgomery and Roger M. Monroe, Sp. Asst. Atty. Gen., Birmingham, for the State.

HARRIS, Judge.

Appellant was put to trial in the Circuit Court of Monroe County upon a solicitor's complaint which, omitting the formal parts, is as follows:

"The State of Alabama, by its District Attorney, complains of A. J. Stallworth that within twelve months before the commencement of this prosecution, he did telephone Shirley C. Carter repeatedly for the purpose of annoying, molesting or harassing the said Shirley C. Carter or her family, contrary to law, and against the peace and dignity of the State of Alabama."

The above complaint was drawn pursuant to the provisions of Title 48, Section 417(3), Code of Alabama 1940, as last amended, which makes the violation of this section a misdemeanor punishable by a fine of not less than $500.00 "and may also be imprisoned in the county jail or sentenced to hard labor for the county for not more than six months." The jury found appellant guilty as charged in the complaint but declined to assess a fine. The court thereupon sentenced appellant to ninety days hard labor for Monroe County.

Mrs. Shirley Carter, the person who received the telephone calls, testified the

telephone calls started before Christmas of 1971, and continued about two times a week until September of 1972. According to her, the caller was a male and he would never tell her his name. He asked her all kinds of personal questions and asked her to go out with him. She told her husband each time she got a call. Each time her husband answered the telephone, the caller would not say anything but there would be a pause and the caller would hang up the receiver.

Finally the husband went to the telephone company seeking help. The company told the husband if he would sign an authorization, the company would put a "trap" on his phone so that the calls could be traced but the company would have to give the results of the trace to the Police Department or to the Sheriff. This was agreed to by Mr. Carter. The "trap" was placed on the telephone on September 1, 1972, with instructions that when another call came in to leave the receiver off and contact the company and the trace would then be made on the call. On the 14th of September, 1972, the caller called again and the trace was made to the telephone listed in the name of appellant. A warrant was issued and appellant was arrested.

Appellant testified that he had never called the Carter telephone number. He said he could not read nor write and that any time he wanted to use the telephone someone else would dial the number for him. Appellant's wife and step-son gave supporting testimony.

The sharp conflict in the evidence adduced by the state and appellant made and presented a question for the jury's determination and the jury resolved that issue against appellant.

The main question presented on this appeal is whether there was a scheme for the systematic exclusion of the members of the Negro race from the jury roll and the jury box of Monroe County. This question was raised by a motion to quash the venire drawn for the week that appellant's case was set for trial.

During the hearing on the motion to quash the venire, the trial judge introduced in evidence as "Court's Exhibit No. 1" instructions to the jury commission which the judge prepared under date of June 25, 1971, outlining to the commission its duties and responsibilities under the law in making up the jury rolls and the jury box. These instructions follow:

"DUTIES OF CLERK

"The clerk of the jury commission shall, under the direction of the jury commission, obtain the name of every citizen of the county over 21 and under 65 years of age and their occupation, place of residence and place of business, and shall perform all such other duties required of him by law under the direction of the jury commission. 1940 Code of Alabama, Title 30, Section 18, as amended.

"DUTIES OF COMMISSION

"The jury commission shall meet in the courthouse at the county seat of the several counties annually, between the first day of August and the twentieth day of December, and shall make in a well-bound book a roll containing the name of every citizen living in the county who possesses the qualifications herein prescribed and who is not exempted by law from serving on juries. The roll shall be arranged alphabetically and by precincts in their numerical order and the jury commission shall cause to be written on the roll opposite every name placed thereon the occupation, residence and place of business on each card. These cards shall be placed in a substantial metal box provided with a lock and two keys, which box shall be kept in a safe or vault in the office of the probate judge, and if there be none in that office, the jury commission shall deposit it in any safe or vault in the courthouse to be designated on the minutes of the commission; and one of said keys thereof shall be kept by the president of the jury

commission. The other of said keys shall be kept by a judge of a court of record having juries, other than the probate or circuit court, and in counties having no such court then by the judge of the circuit court for the sole use of the judges of the courts of said county needing jurors. The jury roll shall be kept securely and for the use of the jury commission exclusively. It shall not be inspected by anyone except the members of the commission or by the clerk of the commission upon the authority of the commission, unless under an order of the judge of the circuit court or other court of record having jurisdiction. 1940 Code of Alabama, Title 30, Section 20, as amended.

## "QUALIFICATIONS OF PERSONS ON JURY ROLL

"The jury commission shall place on the jury roll and in the jury box the names of all citizens of the county who are generally reputed to be honest and intelligent and are esteemed in the community for their integrity, good character and sound judgment; but no person must be selected who is under twenty-one or who is an habitual drunkard, or who, being afflicted with a permanent disease or physical weakness is unfit to discharge the duties of a juror; or cannot read English or who has ever been convicted of any offense involving moral turpitude. If a person cannot read English and has all the other qualifications prescribed herein and is a freeholder or householder his name may be placed on the jury roll and in the jury box. No person over the age of sixty-five years shall be required to serve on a jury or to remain on the panel of jurors unless willing to do so. When any female shall have been summoned for jury duty she shall have the right to appear before the trial judge, and such judge, for good cause shown, shall have the judicial discretion to excuse said person from jury duty. The foregoing provision shall apply in either regular or special venire. 1940 Code of Alabama, Title 30, Section 21, as amended.

## "DUTY OF COMMISSION TO FILL JURY ROLL

"The jury commission is charged with the duty of seeing that the name of every person possessing the qualifications prescribed in this chapter to serve as a juror and not exempted by law from jury duty, is placed on the jury roll and in the jury box. The jury commission must not allow initials only to be used for a juror's name but one full Christian name or given name shall in every case be used and in case there are two or more persons of the same or similar name, the name by which he is commonly distinguished from the other persons of the same or similar name shall also be entered as well as his true name. The jury commission shall require the clerk of the commission to scan the registration lists, the lists returned to the tax assessor, any city directories, telephone directories and any and every other source of information from which he may obtain information, and to visit every precinct at least once a year to enable the jury commission to properly perform the duties required of it by this chapter. 1940 Code of Alabama, Title 30, Section 24.

## "PROCEDURE FOR PREPARING JURY ROLL

"1. Clerk furnishes to the commission names and other information of prospective jurors, on cards, as required by the statute.

2. Commission and/or clerk completes each card.

3. Commission identifies each person from information on the card.

4. Commission applies qualifications to each person. Rejects disqualified.

5. Commission applies disqualifications to each person. Rejects disqualified.

6. Commission applies exemptions to each person. Reject exempt.

7. Commission, by motion, selects remaining persons as jurors.

8. Commission, as required by statute, enters each juror's name and other information into jury roll book.

9. Commission, as required by statute, enters each juror's name and other information on card and places same in jury box.

"QUALIFICATIONS OF PERSONS ON JURY ROLL:

"1. All citizens of the county, male and female, who are

2. Generally reputed to be honest and intelligent and who are esteemed in their respective communities for their integrity, good character and sound judgment.

"DISQUALIFICATIONS:

"1. Under the age of twenty-one.

2. Habitual drunkards.

3. Affliction with permanent disease or physical weakness which would render such person unfit to discharge duties of juror.

4. Conviction of any crime involving moral turpitude.

"PERSONS EXEMPT FROM JURY DUTY. SELECTION 3 OF TITLE 30, 1940 CODE, AS AMENDED:

"1. Judges.

2. Practicing attorneys at law.

3. Sheriffs and deputies.

4. County clerks.

5. County commissioners.

6. Practicing physicians.

7. Practicing dentists.

8. Practicing pharmacists.

9. Practicing optometrists.

10. Veterinarians.

11. Teachers while actually engaged in teaching.

12. Passenger bus drivers.

13. Drivers of motor vehicles hauling freight for hire under supervision of Ala. Pub.Serv.Comm.

14. Railroad engineers.

15. Railroad firemen.

16. Railroad conductors.

17. Railroad station agents.

18. Newspaper reporters while engaged as such.

19. Embalmers while actually engaged as such.

20. Radio broadcasting engineers and announcers while so engaged.

21. Officers and enlisted members of national guard and naval militia of Alabama.

Convict and prison guards."

In brief, appellant centers the issue around the following statement:

"Stretching the testimony most favorably to the state, only twenty-six percent of the names of citizens on the jury roll ordered to be produced by the court were black and some of the names of blacks appeared twice on the list. The 1970 census report put the black population at forty-five (45) percent and the white population at fifty-five (55) percent; but that blacks over twenty-one (21) was (sic) approximately thirty-eight (38) percent of the total population."

The three members of the jury commission were called as witnesses for appellant and they testified, in substance, that they contacted both leading white citizens and black citizens to furnish them the names of people who met the qualifications for jury service and they would put these names in the jury box. They also went over the list of voters published in the Monroe Journal and selected the names of those who possessed the necessary qualifications and these citizens were put in

the jury box. The jury commission did not know the precise number of people in the jury box but knew there were many blacks in the box. They had gotten lists of prospective jurors from black preachers and black principals and school teachers and put the names furnished them in the jury box. They personally knew a great number of blacks in the jury box and continued to add new names after each term of court. They all testified they carried out the instructions about filling the jury box which they had received from the court.

A list of all the jurors in the Monroe County jury box was furnished the attorneys for appellant by orders of Judge Key prior to the hearing on the motion to quash. Counsel for appellant exhibited this list to a well-known black man and asked him to put a "B" by the names of all blacks he knew on the list. Out of about seventeen hundred names, this witness testified that around twenty-five percent were blacks. This witness further testified that a great many more black citizens had been called for jury service in the past few years and particularly since there was a Federal court hearing in Mobile.

One of appellant's attorneys testified that he had gone over the list of jurors furnished them on orders of the court with other black people in Monroe County and they arrived at the figure of 1190 whites and 466 blacks in the jury box of that county.

Honorable Windell C. Owens, a prominent attorney in Monroeville for over twenty-five years was called as a witness for the state and testified that he was present at every term of court for the last twenty-five years. He said that in the last five or six years each jury panel contained a substantial number of colored jurors and that quite often the majority of jurors sitting on a petit jury would be blacks. He recalled striking an all colored jury on one case in which he was counsel.

Honorable L. A. Hixon, circuit clerk of Monroe County since 1935, testified for the state. According to his testimony, the jury panel for the previous term of court contained thirty-five to forty blacks and sixty to sixty-five whites and that there was always a substantial number of colored people called for jury duty and there were always some blacks on the grand jury. He further testified that the jury box of the county was representative of the citizens all over the county.

Honorable E. C. Watson, the Sheriff of Monroe County since 1966, testified that for the past several years a substantial number of colored persons were called for jury duty. He put the percentage of blacks on each panel at around one-third.

At the conclusion of the testimony, the trial judge offered counsel for appellant the jury box and told him he could have whomever he wanted to look at every card to determine the number of blacks and the number of whites that presently comprised the box. Counsel replied, "There is nothing else we want."

From the record:

"THE COURT: I am giving you an opportunity to find out what's in the jury box. That's what I'm telling you now.

"MR. SANDERS: Judge, we rest."

On the record before us it is manifestly clear that the jury commission of Monroe County went about the performance of its duties in utmost good faith and exemplified a conscientious devotion to duty in seeing that the jury box was truly representative of the citizens of the county and that all segments of the population, black and white, were not in disproportion to the whole population.

In Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469, the Supreme Court ruled that it is the responsibility of that court,

under the Constitution to redress "jury packing", which is a sinister species of art, but the court would not condemn good faith efforts to secure competent juries, merely because of varying racial proportions.

■ Fairness in the selection of a jury does not require proportional representation of races. The controlling rule is there must not be a systematic and purposeful exclusion of Negroes from jury duty because of race.

In Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759, the Court said:

" * * * But a defendant in a criminal case is not constitutionally entitled to demand a proportionate number of his race on the jury which tries him nor on the venire or jury roll from which petit jurors were drawn. (citing cases) Neither the jury roll nor the venire need be a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group. * * * "

The following quotation from *Swain*, supra, fits this case like a glove:

" * * * Here the commissioners denied that racial considerations entered into their selections of either their contacts in the community or the names of prospective jurors. There is no evidence that the commissioners applied different standards of qualifications to the Negro community than they did to the white community. Nor was there any meaningful attempt to demonstrate that the same proportion of Negroes qualified under the standards being administered by the commissioners. It is not clear from the record that the commissioners even knew how many Negroes were in their respective areas, or on the jury roll or on the venires drawn from the jury box. The overall percentage disparity has been small, and reflects no studied attempt to include or exclude a specified number of Negroes. Undoubtedly the selection of prospective jurors was somewhat haphazard and little effort was made to ensure that all groups in the community were fully represented. But an imperfect system is not equivalent to purposeful discrimination based on race. We do not think that the burden of proof was carried by petitioner in this case."

■ The testimony of the jury commissioners in this case shows not only a lack of intentional or purposeful exclusion of Negroes from the jury roll or the jury venire, but on the contrary demonstrates a conscious and meritorious effort on the part of all of them to gather, and to keep gathering, additional names of Negroes qualified for jury duty.

■ One other matter raised on this appeal is the action of the trial court in denying appellant's motion for a continuance. The basis of the motion was that the law firm representing appellant had a murder trial in Dallas County set for the same day. It is to be noted that only one of appellant's counsel was present when the motion was made but when the case got under way two lawyers appeared and participated in the trial. The motion for a continuance was not renewed and was, thus, waived.

■ Next appellant urges that the court erred in not excluding from the courtroom the three jury commissioners during the trial. In DeFranze v. State, 46 Ala.App. 283, 241 So.2d 125, this court said:

" * * * The exclusion of witnesses from the courtroom is entirely a matter of discretion with the trial court, and not of right. * * * This discretion is not reviewable. * * * "

The case is due to be affirmed.

Affirmed.

All the Judges concur.