STATE of Missouri ex rel. Dan PATTER-
SON, Relator-Appellant,

v.

T. H. TUCKER et al., Respondents.

No. 9774.

Missouri Court of Appeals,

Springfield District.

Jan. 28, 1975.

John L. Woodward, Steelville, for relator-appellant.

Steelman & Wilkerson, Jerry L. Wilkerson, Salem, for respondents.

Before HOGAN, C. J., and TITUS, BILLINGS and FLANIGAN, JJ.

FLANIGAN, Judge.

Mandamus. On April 2, 1974, a general election was held in the city of Bunker, Missouri, a city of the fourth class, and Dan Patterson received the highest number of votes for the office of mayor. On the date of the election, respondents T. H. Tucker and Glen B. Sapaugh were two of the four aldermen of the city. The other two aldermen were Wendell Conway and

Ray R. Davis. On April 3, 1974, the board of aldermen notified Patterson, by letter, "that according to § 129.420 of the Missouri Revised Statutes 1969, . . . you are not eligible to hold public office. . . . Therefore the board of aldermen cannot swear you in for the office of Mayor." On April 5, 1974, Lloyd Cottrell and Curtis Nash were sworn in as aldermen, replacing Conway and Davis. On that date, according to Patterson's petition, "The members of the Board of Aldermen again refused to recognize the relator as Mayor of the City of Bunker and refused to issue a Certificate of Election to him and permit him to take the oath of that office."

On April 8, 1974, Patterson instituted this mandamus action against Tucker, Sapaugh and Cottrell. Those three men were respondents in the trial court and are the respondents on this appeal. Sapaugh and Conway were sued in their capacity as aldermen and Tucker was sued in his capacity as alderman and also as acting mayor of Bunker.[1] Curtis Nash, the fourth member of the board of aldermen, was not joined as a respondent in the trial court and is not a party to this action, a fact to be treated later in this opinion.

Patterson's petition sought an order commanding the three respondents to "immediately convene, canvass the returns, and cause a Certificate of Election to be issued and allow relator to take and subscribe to the oath of his office as Mayor," together with other general relief.

On April 9, 1974, the trial court issued to the respondents its alternative writ of mandamus, commanding them to comply with the prayer of Patterson's petition by April 16, or to appear on April 20 to show cause for their refusal so to do. Although the return of respondents purported to

---

1. Patterson, in 1973, had held the office of mayor of Bunker but had been removed from office by the board of aldermen pursuant to § 79.240 V.A.M.S., and respondent Tucker then became, according to the pleadings, "acting mayor or acting president of the board of aldermen." See § 79.100, RSMo 1969, V.A.M.S.

plead[2] to the alternative writ, in fact it pleaded to Patterson's petition and admitted portions thereof and denied the rest. The return also contained the following: "That further answering, as an affirmative defense, Relator is not eligible for office by reason of his defalcation in office pursuant to Section 15, Ordinance Number 84,[3] of the Laws and Ordinances of The City of Bunker."

At the hearing on the merits, the trial court, having heard the evidence, resolved the issues in favor of the respondents and entered its "Order and Judgment" dismissing the alternative writ.

Patterson appeals from that judgment.

■ ■ On this appeal the concern of this court is whether or not the trial court reached a correct result. We need not determine what reasons may have guided the trial court to its judgment or whether those reasons were right or wrong. White v. Smith, 440 S.W.2d 497, 512[21] (Mo. App.1969); State ex rel. Pope v. Lisle, 469 S.W.2d 841, 842[1] (Mo.App.1971). Mandamus will not issue in doubtful cases. State ex rel. Burke v. Ross, 420 S.W.2d 365, 368[10] (Mo.App.1967). A litigant seeking a writ of mandamus must show that he is possessed of a clear and unequivocal right to the remedy. State ex rel. Christian v. Lawry, 405 S.W.2d, 729, 731[7] (Mo.App.1966).

■ Mandamus will lie to compel the board of canvassers or other proper officials to discharge their ministerial duties in canvassing votes or returns. State ex rel. Donnell v. Osburn, 347 Mo. 469, 147 S.W. 2d 1065 (Mo. banc 1941). "[T]he duty of casting up the vote certified by the returns and ascertaining who received the highest vote is a purely ministerial duty, and being such the canvassers have no right to go behind the returns." State ex rel. Donnell v. Osburn, supra, 147 S.W.2d 1065, 1069[10]. See also State v. Parks, 409 S.W.2d 199, 206 (Mo.App.1966). The issuance of a certificate of election is a ministerial act which may be compelled by mandamus. Barnes v. Gottschalk, 3 Mo.App. 111, 120[6] (1876), 29 C.J.S. Elections § 240, p. 669. See also 26 Am.Jur.2d Elections § 307, p. 132.

However, "'[t]he purpose of the extraordinary writ of mandamus is to compel the performance of a ministerial duty which one charged with the duty has refused to perform. The writ can only be issued to compel a party to act when it was his duty to act without it. It confers upon the party against whom it may be issued no new authority, and from its very nature can confer none.'" State v. Public School Retirement System, 364 Mo. 395, 262 S.W. 2d 569, 574[3, 4].

■ "[A] litigant seeking relief by mandamus must show that he has a clear, unequivocal, specific right to have performed the thing demanded, *and that the defendant or respondent has a corresponding duty to perform the action sought.*" (Emphasis added). Powell v. City of Creve Coeur, 452 S.W.2d 258, 263[3] (Mo.App.1970); see also State ex rel. Continental Oil Co. v. Waddill, Mo., 318 S.W.2d 281, 288[8].

Accordingly, it is necessary to determine whether it was the legal duty of respondents to perform the acts enumerated in

---

2. Rule 94 V.A.M.R. deals with the special action of mandamus. Pleaders in mandamus actions should study the opinion of Judge A. P. Stone, Jr., speaking for this court, in State v. City of St. Robert, 424 S.W.2d 73 (Mo.App.1968). Patterson failed to file a reply to the return. This procedural irregularity, in view of the present posture of this case, may be disregarded. State ex rel. Aimonette v. C & R Heating & Serv. Co., 475 S.W.2d 409, 412 [2–4] (Mo.App.1971).

3. § 15, Ordinance No. 84, reads as follows: "No person shall be eligible for City Office, either elective or appointive who, at the time of his election or appointment be not a qualified voter of the City of Bunker, Mo., or has been in arrears to the City for any fine, taxes, forfeitures or defalcation in office in the said City Government."

Patterson's prayer and in the alternative writ.

Bunker is a city of the fourth class, a fact conceded by the parties and one of which this court takes judicial notice. § 79.010 V.A.M.S. Shelby County R-IV School District v. Herman, 392 S.W.2d 609, 611[3] (Mo.1965).

§ 79.030 V.A.M.S. requires, with exceptions not here applicable, that the city elections in Bunker be held under the provisions of Chapter 111 RSMo 1949. § 79.030 also provides that "all duties specified in the state election laws to be performed by the county clerk shall be performed by the city clerk in the city elections."

§ 111.621 V.A.M.S., in pertinent part, and with an exception not here applicable, provides: "The county clerk shall, within five days after the close of each election, select one person from each of the two political parties casting the highest number of votes at the last preceding general election to assist him in examining and counting the votes given to each candidate, and give to those county candidates having the highest number of votes certificates of election." [4]

■ By the plain language of § 79.030 V.A.M.S. it was the duty of the city clerk of Bunker, and not the duty of respondents, in the city election to examine and count the votes given to each candidate (with the assistants described), and to give certificates of election to those candidates, including Patterson, having the highest number of votes. Mandamus will not issue to require the respondents to perform those duties which the statute imposed upon the city clerk alone.

However, the record reflects that Bunker has a city ordinance reading as follows: "It shall be the duty of the Mayor and the Board of Aldermen to meet within three days after an election and cast up the vote and issue to the parties receiving the highest number of votes for any office a commission or certificate of election." Ordinance No. 84, § 10.

■ It is obvious that Ordinance No. 84, § 10, seeks to transfer to the mayor and the board of aldermen of Bunker duties which § 79.030 V.A.M.S. imposed upon the city clerk. To say the least, the validity of Ordinance No. 84, § 10 is doubtful.[5] But even if Ordinance No. 84, § 10 is valid, relator's case fails because he failed to sue *all* of the persons upon whom that ordinance sought to place the duty of casting up the vote and issuing to the victorious candidates their certificates of election.

4. Chapter 111, RSMo 1949, was repealed in 1969. Laws, 1969, p. 190, § 1. Prior to the repeal of Chapter 111, § 111.710 V.A.M.S. provided, in pertinent part: "The clerk of each county court shall, within five days after the close of each election, select for his assistants one person from each of the two political parties casting the highest number of votes at the last preceding general election, and examine and cast up the votes given to each candidate and give to those having the highest number of votes certificates of election." In 1969, when former § 111.710 and the rest of Chapter 111 were repealed, the legislature enacted in lieu thereof Chapter 111 consisting of §§ 111.011 to 111.811 relating to the same subject matter. Though the language or § 111.621 varies slightly from that of repealed § 111.710, the minor variance does not affect this appeal, so the question of whether the repealed statute or the present statute is a part of § 79.030 need not be determined.

The curious may consult State v. Williams, 237 Mo. 178, 140 S.W. 894 [2] (1911).

5. In the City of Richmond Heights v. Shackelford, Mo.App., 446 S.W.2d 179 at p. 180 it is said: "Equally well established with the rule quoted above and used frequently in testing the validity of municipal ordinances, is the one requiring an ordinance to be consistent and in harmony with state law on the same subject. Where the municipal corporation has authority to legislate, its exercise of this authority must not conflict with the laws of the state. This rule is established by statute (Sec. 71.010, RSMo 1959, V.A.M.S.) and is also a part of the common law adopted by our courts (State ex rel. Hewlett v. Womach, 355 Mo. 486, 196 S.W.2d 809, 812; John Bardenheier Wine & Liquor Co. v. City of St. Louis, 345 Mo. 637, 135 S.W.2d 345, 348; City of St. Louis v. Stenson, Mo.App., 333 S.W.2d 529, 536.''

The ordinance placed those duties upon "the mayor and board of aldermen." We need not determine whether "the board of aldermen" was a suable entity because, if such it was, it was not sued. If the ordinance is to be given effect, and the board of aldermen was not a suable entity, the action would lie against the mayor (in this case the acting president of the board of aldermen, § 79.100 V.A.M.S.) and the members of the board of aldermen.

At the time this action was instituted, one member of the board of aldermen of Bunker was Curtis Nash. According to Patterson's petition, "Curtis Nash is the only alderman who was and is now, willing to perform the above function in allowing relator to assume the position of Mayor of the City of Bunker." The pleading filed by respondents denied that allegation. The attitude of Alderman Nash, whatever that attitude may be, does not remedy the defect occasioned by his non-joinder.

In State v. Olenhouse, 324 Mo. 49, 23 S. W.2d 83, 86[2, 3] (Mo. banc 1929), the following language appears:

"Relator is not entitled to the relief granted by this writ. In the first place, the county court, and not the township board, is authorized to fill vacancies in the township board, and we will not attempt by mandamus to compel the township board to do a thing it has no authority to do. In the next place, we cannot, in this proceeding, compel the board to proceed to the election of a president because the board is not in court. Only two members of the board are parties to this suit. In High, Extraordinary Remedies (3d Ed.) p. 430, § 440, the author says: 'When the duty whose performance is sought to be coerced is encumbent upon an official board or court composed of several persons, all of the persons charged with the performance of such duty should be joined as respondents.'

"The same author, at page 432, § 442 says: 'So, too, the writ should be directed against the entire board of municipal officers, and a failure in this respect is sufficient ground for dismissal.'

"In 38 C.J. p. 850, § 554, it is said: 'And although there is some authority to the contrary, it is generally held that, even where some of those on whom a common duty rests are willing to act in conjunction with the others, yet all must be made respondents.'

"For the reasons stated, relator is not entitled to any of the relief prayed for in his petition or granted by the alternative writ."

See also State v. City of St. Joseph, 237 Mo.App. 399, 169 S.W.2d 419, 420[1].

■ Patterson's prayer further requested that the respondents be ordered to allow Patterson to take and subscribe to the oath of his office as mayor. § 79.260 V.A.M.S. provides "Every officer of the city . . . before entering upon the duties of his office, shall take and subscribe to an oath or affirmation before some court of record in the county, or the city clerk, . . ." That statute also prescribes the contents of the oath and provides for giving bond to the city. Nowhere in the statute is there any duty imposed upon the respondents in this action with regard to Patterson's taking and subscribing to an oath. "To warrant the issuance of a writ of mandamus, there must, in addition to a clear legal right reposing in the relator or petitioner, be a duty imposed upon the respondent by law to perform the act sought to be enforced, and the writ will issue only if there is a clear showing of the existence of such a duty, and of a default in the performance thereof." 52 Am.Jur.2d, Mandamus § 72, p. 394.

The judgment is affirmed.

All concur.