STATE of Missouri, Plaintiff-Respondent,

v.

Dan PATTERSON, Defendant-Appellant.

No. 9931.

Missouri Court of Appeals, Springfield District.

March 11, 1976.

J. Max Price, Pros. Atty., Salem, for plaintiff-respondent.

Gene Gulinson, Salem, for defendant-appellant.

Before BILLINGS, C. J., and TITUS and FLANIGAN, JJ.

TITUS, Judge.

Defendant Dan Patterson was court-tried and convicted of making "repeated tele-

phone calls" during a 7-week period (3 May to 20 June 1973) "for the sole purpose of harassing" Maxine Lough. § 563.910–1(4), V.A.M.S.[1] The court sentenced defendant to one year in the county jail with nine months of credit for prior successful probation time. During the 7-week period in question, Dan was the mayor and Maxine was the city clerk of Bunker, which we judicially note to be a city of the fourth class [State ex rel. Patterson v. Tucker, 519 S.W.2d 22, 25 (Mo.App.1975)] with a 1970 population of 447. Gehner v. McPherson, 430 S.W.2d 312, 317[12] (Mo.App.1968). Maxine became city clerk on or about 1 May 1973.

The evidence against defendant was that with the single exception of one call to Maxine at her home, the calls were made to the grocery store operated by Maxine. All calls, save one, related to "city business", and the exception was when defendant "told me he had heard that I had said that I would show him this and that if I was city clerk." According to Maxine, defendant called "[s]ometimes twice a day, sometimes three times a day, and on one occasion, . . . I think, as much as five times a day." An amplifier was attached to the grocery store telephone for two days so others (who later appeared as witnesses for the state) could hear the conversations. Defendant called two or three times while the amplifier was connected. "One time" concerning all the calls, so Maxine testified, defendant "asked for a form," but the subject of all other calls was that defendant "wanted the [city] books brought back to the city hall." Maxine steadfastly refused to return the books contending she was under orders from the board of aldermen to keep them "until the auditor came by," which contingency, as we read the record, never occurred during the 7-week period. Defendant always identified himself when he called, never cursed, "never raised his voice . . too much," and he and Maxine

referred to one another on a first-name basis. Maxine recounted that "on this one particular morning that he called [I told him] I wished he wouldn't call me any more [but] he did." As time went on and Maxine remained adamant in her refusal to return the city books, defendant became "quite sarcastic several times [and] finally . . he says 'You will be arrested and put in jail,' that I would be in serious trouble." Around June 20, Maxine had her "phone disconnected, had an unlisted number."

In defense, defendant denied having called Maxine "four or five times a day" and estimated "I never called no more than ten times in the seven week period." He considered the calls necessary to obtain information for revenue sharing, to supply data to the Missouri Clean Water Commission, to answer correspondence, et cetera. Defendant admitted advising Maxine "that she may have been in a lot of trouble" by refusing to provide him with requested information and for not returning the books to the city hall, but asseverated that he "never once threatened her with arrest." Defendant described each call as "very brief" in duration, and introduced evidence that the city clerk of Salem received an average of 15 to 20 calls in a two-week period from her mayor.

We know of no Missouri authority construing the bounds or describing the constituent elements of § 563.910–1(4), supra n. 1. However, as we undertake that task for the first time in this state, we heed the axiom that courts should refrain from extending a statute beyond its proper limits and that a law defining a particular offense must be construed liberally in favor of the accused and strictly against the state. State v. Chadeayne, 323 S.W.2d 680, 685[4] (Mo. banc 1959). Furthermore, a statute will not be interpolated as embracing any but those clearly described both within the letter and spirit of the law [State v. Alder-

1. Sec. 563.910—"1. It shall be unlawful for any person to: . . . (4) Individually . . . make repeated telephone calls, during which conversation ensues, solely to harass any person at the called number."

*man,* 500 S.W.2d 35, 36–37[2] (Mo.App. 1973)], and should fair doubt arise as to whether the accused is included within a given statute, that doubt will be resolved in his favor. *State v. Hall,* 351 S.W.2d 460, 463[3] (Mo.App.1961). Of course, in addition to the state's usual burden in a criminal cause, there is also its burden of adducing substantial evidence of every constituent element of the offense charged. *State v. Smith,* 485 S.W.2d 461, 464[3] (Mo.App. 1972). As confined to the circumstances of this case, it seems clear that the constituent elements of the offense laid against defendant herein under § 563.910–1(4) are that he (a) made repeated telephone calls to Maxine (b) during which conversation ensued (c) solely to harass Maxine.

■ The court's finding that defendant was guilty at the conclusion of the bench trial had the force and effect of a guilty verdict. Rule 26.01(b), V.A.M.R.; *State v. Daniels,* 487 S.W.2d 465, 469[4] (Mo.1972). This being so, the guilty verdict constrains us to view the evidence in the light most favorable to the verdict, accept all evidence and proper inferences therefrom which support the verdict, and reject all contrary evidence. *State v. Garrett,* 518 S.W.2d 97, 100[5] (Mo.App.1974). In awe of these commandments we cede that the state established constituent elements (a) and (b), supra, id est, that defendant made repeated telephone calls to Maxine during which conversations ensued. As to constituent element (c), ante, the state was required to prove beyond a reasonable doubt that the purpose of the calls was "solely to harass" Maxine, thereby making defendant's intent and motive issues in the case. *State v. Goode,* 118 Ohio App. 479, 195 N.E.2d 581, 584 (1962). In our opinion the state failed to sustain its onus probandi as to the third element.

Most authorities we have conned were involved with statutes differing from § 563.910 or with parts of similar statutes unlike Subsec. 1, subd. (4) of our law.[2] Nevertheless, the cases perused indicate a reluctance to apply so-called criminal telephone statutes with liberality against the accused, sometimes because of freedom of speech guarantees under the First Amendment, and more often because of an understandable unwillingness to criminalize the normal risks of unpleasant human intercourse emanating from neighborhood feuds, romantic rumbles, family fall-outs, and small-town-type political bickerings or enmities. *United States v. Darsey,* infra n. 2, D.C.Pa., 342 F.Supp. 311 at 313–314; *State v. Hulsey,* infra n. 2, 15 Ohio App.2d 153, 239 N.E.2d 567. It has previously been indicated herein that in May and June 1973 defendant was the mayor of Bunker. However, when this case was tried in November 1973, defendant was characterized as "the impeached mayor of Bunker." *State ex rel. Patterson v. Tucker,* supra, 519 S.W.2d 22, advises that sometime between June and November 1973, defendant had been removed from office by the board of alder-

2. *Stallworth v. State,* 52 Ala.App. 619, 296 So.2d 243 (1974); *Baker v. State,* 16 Ariz. App. 463, 494 P.2d 68 (1972); *State v. Robinson,* 23 Conn.Sup. 430, 1 Conn.Cir. 292, 184 A.2d 188, 97 A.L.R.2d 500 (1962); *United States v. Darsey,* 431 F.2d 963 (5th Cir. [Fla.] 1970); *People v. Cooper,* 336 N.E.2d 247 (Ill.App.1975); *State v. Holliday,* 22 Iowa 397, 169 N.W.2d 768 (1969); *State v. Hochenedel,* 253 La. 263, 217 So.2d 392 (1968); *Nichols v. State,* 5 Md.App. 340, 247 A.2d 722 (1968); *Caldwell v. State,* 26 Md. App. 94, 337 A.2d 476 (1975); *People v. Green,* 63 Misc.2d 435, 312 N.Y.S.2d 290 (1970); *State v. Godwin,* 267 N.C. 216, 147 S.E.2d 890 (1966); *State v. Murphy,* 176 Ohio St. 385, 199 N.E.2d 884 (1964); *State v. Hulsey,* 15 Ohio App.2d 153, 239 N.E.2d 567 (1968); *State v. Goode,* 118 Ohio App. 479, 195 N.E.2d 581 (1962); *State v. Zeit,* 539 P.2d 1130 (Or.App.1975); *United States v. Darsey,* 342 F.Supp. 311 (E.D.Pa.1972); *Alobaidi v. State,* 433 S.W.2d 440 (Tex.Cr. App.1968), cert. denied, 393 U.S. 943, 89 S.Ct. 313, 21 L.Ed.2d 281 (1968); *Schuster v. State,* 450 S.W.2d 616 (Tex.Cr.App.1970); *Shaw v. State,* 465 S.W.2d 169 (Tex.Cr.App. 1971); *Walker v. Dillard,* 523 F.2d 3 (4th Cir. [Va.] 1975); *State v. Hastings,* 133 Vt. 59, 330 A.2d 87 (1974); Annot., 97 A.L.R.2d 500, 503–510 (1962); 47 U.S.C. § 223 is almost identical to § 563.910 and is the statute involved in the above two *Darsey* cases.

men pursuant to § 79.240, V.A.M.S., that at the next general city election held about five months later on April 2, 1974, defendant received the highest number of votes for mayor, and that the then board of aldermen (with one exception) refused to cause a certificate of election to be issued to defendant or to allow him to take office as mayor of Bunker. From this and the aroma of animosity to be sniffed out of the instant record, it is evident that any political love which may have been lost between Maxine (obviously dedicated to the dictates of the board) and defendant was negligible.

■ Our statute [§ 563.910–1(4)] specifies that before an accused may be properly convicted under the act, the repeated telephone calls must have been made "solely to harass." Had the General Assembly desired to dilute the statute to make it a crime to institute repeated calls with other intents mixed with harassment, it would have been a simple matter for it to have said so or to have deleted the word "solely." *DePoortere v. Commercial Credit Corporation*, 500 S.W.2d 724, 727 (Mo.App.1973). Courts, in determining the meaning and application of statutes, are obliged to take words in "their plain or ordinary and usual sense." § 1.090, V.A.M.S.; *State v. Brady*, 472 S.W.2d 356, 358[1] (Mo.1971). Also, significance and effect should be afforded every word, phrase and sentence of a law. *State ex rel. Wright v. Carter*, 319 S.W.2d 596, 600[6] (Mo. banc 1958). Consequently, we have no leave to ignore, alter, or corrupt the ordinary, usual and plain meaning of the word "solely"; neither may we cripple the word with strained wrenchings at its well-understood import.

■ "Solely" is synonymous with "only," "exclusively," "entirely," and "wholly." It means "exclusively for," "nothing else," "to the exclusion of other purposes," "apart from all others," "to the exclusion of alternate or competing things," and "to the exclusion of all else." It "leaves no leeway" and is equivalent to the phrase "and nothing else." *Stockton Harbor Indus. Co. v.*

*Commissioner of Int. Rev.*, 216 F.2d 638, 645 (9th Cir. 1954); *Bergsvik v. Bergsvik*, 205 Or. 670, 291 P.2d 724, 730 (1955); *Moore v. Stevens*, 90 Fla. 879, 106 So. 901, 904, 43 A.L.R. 1127, 1131 (1925); *People ex rel. Divico v. Adams*, 264 App.Div. 315, 35 N.Y. S.2d 453, 455[1] (1942); Webster's Third New International Dictionary of the English Language Unabridged, p. 2168; Webster's New Collegiate Dictionary, p. 1106; Webster's New World Dictionary of the American Language (College Ed.), p. 1387; The American Heritage Dictionary of the English Language, p. 1229.

Under Missouri statutes relating to cities of the fourth class (Ch. 79, V.A.M.S.), the mayor "shall exercise a general supervision over all the officers and affairs of the city" (§ 79.120); he "shall sign all orders, drafts and warrants . . . and cause the city clerk to attest the same . . . and to keep an accurate record thereof in a book" (§ 79.190); he is required to "cause all subordinate officers to be dealt with promptly for any neglect or violation of duty" (§ 79.-200); and "shall have power, as often as he . . . may deem it necessary, to require any officer of the city to exhibit his accounts or other papers or records." § 79.-350.

■ We eschew the chore of recasting all the evidence in detail or describing every claimed or counterclaimed abuse on both sides. It suffices to say that on the one hand we have a neophyte city clerk, patently hostile to the mayor, who is ostensibly aiding and abetting an equally antagonistic board of aldermen by continually denying the mayor's entreaties to return the city books to the city hall where city business normally would be conducted. On the other hand we have a mayor, vested with the statutory authority and duties above recounted, who is confronted with thwartings of his administrative directives. To overcome these real or imaginary challenges, the mayor initiates numerous telephone calls to the city clerk at her grocery store during business hours concerning "city business," requesting or demanding, inter

alia, that she return the city books to the city hall. During the conversations, the mayor raised his voice on occasion, became sarcastic several times, and finally suggested the recalcitrant city clerk was in serious trouble and could be arrested and jailed. The mayor's part of the dialogue was devoid of cursing and profanity; no obscene, lascivious, filthy or indecent comments or suggestions (usually the basis for objectionable telephone calls) were employed. Under such circumstances the question is this: Who can, beyond a reasonable doubt, attribute the mayor's tenacity, vocal nuances and outbursts of pique to an unadulterated intent and motive "solely to harass," as opposed to perhaps an unwise persistency embracing expressions emitted by a frustrated person imbued with foibles common to most homo sapiens? The question, to us at least, is self-answering: and we further observe the fact that Maxine, as she claimed, was upset by defendant's telephone calls and had her telephone disconnected is not sufficient by itself to show that defendant's intent and motive in making the calls were solely to harass. *Caldwell v. State*, supra n. 2, 337 A.2d at 487. Granted that defendant's behavior was not always reasonable, prudent, above reproach or completely lacking in elements of harassment, yet the state, even in the best light of its evidence, did not prove beyond a reasonable doubt that defendant's intent and motive for initiating the repeated calls were only, exclusively, wholly, entirely and solely to harass Maxine. Therefore, the judgment nisi is reversed and defendant is discharged.

It is so ordered.

All concur.