LEHAN, Judge.
Appellant, a juvenile, appeals an order entered against her which withheld adjudication of delinquency and placed her in a community control program. She had been charged with making obscene or harassing telephone calls in violation of section 365.-16, Florida Statutes (1981). Appellant argues that the trial court erred in failing to grant her motion to suppress evidence obtained through the telephone company’s interception of a wire communication. We disagree and affirm the order.
The telephone company, pursuant to a request from the victim of those telephone calls but without notifying the police, used a computer to trace the origin of the victim’s incoming calls and to determine if the victim’s telephone number was dialed from appellant’s telephone. At appellant’s hearing the court admitted into evidence data which showed that appellant’s telephone number was one of the numbers which the trace identified. Section 934.09(9)(a), Florida Statutes (1981), provides for unlawfully intercepted evidence to be suppressed on an aggrieved party’s motion. The issue here is whether the telephone company’s use of the computer in this manner was an unlawful interception of a wire communication under chapter 934, Florida Statutes (1981). We conclude that it was not.
Section 934.03(1), Florida Statutes (1981), provides that it is unlawful to intercept any wire communication except as specifically provided in chapter 934. We find the type of device used here did not accomplish an unlawful “interception” within the meaning of the statute.
Section 934.03(2)(f) states,
It is lawful under this chapter for an employee of a telephone company to intercept a wire communication for the sole purpose of tracing the origin of such communication when the interception is requested by the recipient of the communication and the recipient alleges that the communication is obscene, harassing, or threatening in nature. The individual conducting the interception shall notify local police authorities within 48 hours after the time of the interception,
(emphasis added). Accordingly, if there was a statutorily defined “intercept” by the telephone company in this case, it apparently was authorized by the first sentence of section 934.03(2)(f). We need not reach the effect, if any, of the failure of the telephone company to notify the police pursuant to the second sentence in that statute. As explained below, there was no statutorily prohibited “intercept” under the foregoing provision which generally proscribes interceptions.
The term “intercept” is statutorily defined as,
the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device.
*472 § 934.02(3), Fla.Stat. (1981). “Aural” is defined as “of or receiving through the ear or the sense of hearing.” Webster’s New World Dictionary (1952). “Contents” of a communication which may not be lawfully intercepted, except as otherwise provided in Chapter 934,
includes any information concerning the identity of the parties to such communication or the existence, substance, purport or meaning of that communication.
§ 934.02(7), Fla.Stat. (1981). Applying the above definitions to the instant facts, it appears that the computer’s trace did not “intercept” the appellant’s telephone conversation because there was no “aural acquisition” of the contents of the conversation.
Under Armstrong v. Southern Bell Telephone & Telegraph, 366 So.2d 88, 89 (Fla.1st DCA 1979), an “electronic device which records the number dialed” does not constitute an aural interception of the dialer’s communication. The Armstrong court found that:
The device attached to appellants’ telephone lines did not itself have the capability of intercepting nor recording the contents of any oral communication. The device only recorded, by electrical impulses, telephone numbers called from the telephone to which attached.

Although ... the device afforded a connection by which eavesdropping or recording equipment could have been attached no evidence was ever obtained that anyone ever actually made such a connection or that anyone actually ever listened to any conversation or communication or ever attempted to do so.
Id. Thus the court concluded that since the device did not discover the contents of any telephone conversation, it did not “aurally acquire” a communication, therefore no “intercept” occurred. Armstrong cited cases from other jurisdictions for the proposition that the foregoing is “well settled.” Id. at 90. Apparently the rationale was that even if the device, by tracing telephone numbers, provided information “concerning the identity of the parties” under section 934.02(7), it was not an “aural acquisition” under section 934.02(3) in that information was not received through the ear or the sense of hearing. This was the type of analysis used in United States v. New York Telephone Co., 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977), and United States v. Lanza, 341 F.Supp. 405 (M.D. Fla.1972).
New York Telephone and Lanza both employed that type of analysis in concluding that the use of a so-called “pen register” did not result in an “interception” within the meaning of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. sections 2510-2520 (1970 ed. and Supp. V). (The federal statute’s definitions of “intercept” and “contents” [sections 2510(4) and (8)] are the same as those of the Florida statute, [sections 934.-02(3) and (7)]; however, the federal statute does not contain a provision comparable to section 934.03(2)(f) for notification to the police by a telephone company). Under that analysis there was no “aural acquisition” from electronic recordings of telephone numbers.
Evidently a pen register was the type of device which was involved in Armstrong and which is somewhat different from the computer method used in this case. “A pen register is a mechanical device that records numbers dialed on a telephone by monitoring the electrical impulses caused when the dial on the telephone is released. It does not overhear oral communications and does not indicate whether calls are actually completed.” New York Telephone, 434 U.S. at 161 n. 1, 98 S.Ct. at 366 n. 1., 54 L.Ed.2d at 382 n. 1. That is, a pen register apparently records the telephone numbers of outgoing calls from a particular telephone, whereas the computer method used here records the telephone number origins of incoming calls to a particular telephone. We find that distinction makes no difference because there was no “aural acquisition” by the telephone company in this case of the contents of any telephone conversation.
*473 Also, in Michigan Bell Telephone Co. v. United States, 565 F.2d 385 (6th Cir.1977), the Sixth Circuit applied the same type of rationale in its holding that an electronic trace, apparently accomplishing the same sort of function as the computer trace employed in the case before us, did not constitute an “intercept.”
We conclude that the same rule applicable to pen registers also controls the orders requiring installation of card drops and other mechanical or electrical devices designed to trap and trace incoming telephone calls entered by the district court in the present case. The equipment used in trapping and tracing telephone calls is similar to a pen register in that it does not accomplish an “aural acquisition” within the meaning of Title III. Traces, like pen registers, neither hear nor monitor conversations.
Id. at 388.
Accordingly, the trial court did not err in denying the motion to suppress. See United States v. Escandar, 319 F.Supp. 295 (S.D.Fla.1970) (congress did not intend for a pen register to be an “interception”.) See also District Attorney for Plymouth District v. Coffey, 386 Mass. 218, 434 N.E.2d 1276 (1982) (evidence obtained by tracing incoming calls should have been admitted when state statute permitted telephone operator to intercept communications when necessary to prevent harassing phone calls); State v. Droutman, 143 N.J. Super. 322, 362 A.2d 1304 (1976) (evidence of defendant’s identity obtained as a result of telephone company’s tracing procedure held admissible because the trace was not an interception within the meaning of the New Jersey statute); State v. Holliday, 169 N.W.2d 768 (Iowa 1969) (evidence of telephone numbers dialed from alleged perpetrator’s phone obtained by telephone company’s use of pen register held admissible); State v. Hulsey, 15 Ohio App.2d 153, 239 N.E.2d 567 (1968) (evidence of the identity of the caller which was determined by a pen register attached to caller’s telephone line held admissible); Harmon v. Commonwealth, 209 Va. 574, 166 S.E.2d 232 (1969) (evidence obtained through use of pen register admissible at defendant’s trial for making obscene telephone calls).
Our conclusion that the trace in this case was not an “intercept” may seem to leave unanswered the question, “What does the language of section 934.03(2)(f) purport to govern if it does not govern the trace involved here?” The apparent answer is that although arguably the legislature may have had in mind the purpose of limiting the actions of a telephone company in situations like this, the statutory language cannot be construed to apply to these facts. If the legislature had wished to provide for notification to police concerning a trace of the type involved here, it could have done so, e.g., through a different definition of “intercept.”
Even if we were certain about the foregoing possible underlying legislative purpose, we could not overlook the foregoing definitional sections of the Florida act which are interpreted in the case law we have cited.
AFFIRMED.
GRIMES, A.C.J., and SCHEB, J., concur.