STATE of Missouri ex rel. John W.
DYKE and Dorothy Dyke,
Relators-Respondents,

v.

James R. SPRADLING, Director of Revenue of Missouri, and Dora Dale Mittenberg, State Collector of Revenue of Missouri, Respondents-Appellants.

No. KCD 27578.

Missouri Court of Appeals,
Kansas City District.

March 29, 1976.

Motion for Rehearing and/or Transfer
Denied May 3, 1976.

Application to Transfer Denied
June 14, 1976.

John C. Danforth, Atty. Gen., Clarence Thomas, Asst. Atty. Gen., Jefferson City, for respondents-appellants.

Walter D. MeQuie, Jr., Montgomery City, for relators-respondents.

Before DIXON, P. J., PRITCHARD, C. J., and WASSERSTROM, J.

WASSERSTROM, Judge.

Relators filed application in the court below for a writ of mandamus in the nature of a class suit to compel the respondent Director of Revenue to issue automobile license plates for the year 1974 containing the same numbers accorded to each respective registrant in prior years. Relators had been assigned license number 1–248 in 1948, and plates containing those numbers had been issued to them for each year through 1973.

Sometime prior to 1973, the Director adopted a new plan for license plates on all non-commercial motor vehicles by which each plate would contain a combination of six numbers and letters. The basic reason for this change was that the old system of six digits of just numbers would permit accommodation of only a million automobiles. As the number of registered automobiles in Missouri increased, that became inadequate, as evidenced by the passenger car renewals in 1972 which were slightly in excess of two million. The new system of combining numbers with letters permitted enough combinations to carry the increased volume while still remaining within six digits.

On October 9, 1973, respondents told relators' attorneys that they did not intend to and would not issue license plates bearing numbers previously assigned to relators or to any non-commercial motor vehicle registrant for subsequent registration periods whether or not application therefor was made, required fees paid and all formalities required by law carried out. Upon that statement, relators filed the present proceeding and their petition stated that it was in behalf "of all owners of non commercial vehicles." However, the trial court on its own initiative reduced the class to those registrants with numbers under 10,000. The testimony was that in 1973 there were 9,500 of these low numbers outstanding, and the Director of Division of Departmental Services of the Missouri Department of Revenue testified that the holders of these low numbers traditionally request the reissuance of those numbers each year.

The trial court on December 5, 1973, issued its peremptory writ of mandamus by which it directed the respondents "to issue to persons this date holding non-commercial motor vehicle license plates numbered 1 through 9999 who make proper application therefor and pay all required fees under the statutes of Missouri pertaining to reregistration of motor vehicles license plates for the year 1974 numbered as previously assigned." We reverse.

A writ of mandamus can properly be issued only if the relators show a clear, unequivocal, specific right thereto. *In re Marshall*, 478 S.W.2d 1 (Mo. banc 1972); *State ex rel. Patterson v. Tucker*, 519 S.W.2d 22 (Mo.App.1975); *Powell v. City of Creve Coeur*, 452 S.W.2d 258 (Mo.App.1970). In the present situation there is no statuto-

ry provision expressly establishing property or personal rights in the license numbers to which relators claim a right. In order to try to establish the existence of such right, relators are forced to an attempt to infer the right by implication from the provisions governing the registration and licensing of motor vehicles, Sections 301.010 to 301.540.[1] In their effort to do so, they point specifically to three statutory sections.

The principal section so relied on is § 301.130–1, which provides:

"Upon the filing of an application for registration * * * the director shall assign a number or numbers to each applicant and without further expense to the applicant shall issue and mail or deliver to him a certificate of registration * * * and * * * a set of license plates bearing the name or the abbreviated name of the state, the month and year of expiration and the number of numbers assigned; except that a set of plates for commercial motor vehicles shall not be assigned on a permanent basis . . ."

A proper understanding of the section just quoted together with the other relevant current statutory provisions requires reference to changes in the automobile licensing system which has occurred over the years. Prior to 1947, the registration statutes provided for assignment of a number to each automobile. § 8369b RSMo 1939. Those statutes further provided that license plates were to be issued to the owner annually. §§ 8376 and 8377 RSMo 1939. Then in 1947, the statutory scheme was radically changed to a system of permanent plates to be issued to and retained by the owner of the vehicle, and for annual registration to be handled under a series of twelve registration periods. To implement this new system, § 301.130 RSMo 1949 provided that the Director should issue to each applicant "a permanent license plate or set of plates" and that upon reregistration "the director of revenue shall * * * mail or deliver a metal tab * * * designating the year of registration, which tab shall be attached to

the license plate in the place provided therefor." Still later, in 1969, the statutes were further amended to create the present system for issuance of licenses. In the current § 301.130, reference to a "permanent" set of plates and annual renewal "tabs" were deleted.

Thus, the present statutory scheme goes back to that which was in effect prior to 1947 insofar as a new set of license plates being issued annually for each vehicle. No express provision now appears anywhere in the statute stating that the numbers which appear on these plates shall be permanent from year to year. The natural expectation is that when the plates change from year to year, so also may the numbers which appear thereon. Since there is no express statement in § 301.130–1 that the number assigned to each registrant is to be permanent, there is no logical reason to force such an addition by implication.

■ The exception appearing at the end of subsection 1 raises no implication favorable to relators' position. The specific statement that license plates for commercial vehicles shall not be on a permanent basis cannot mean that plates for non-commercial vehicles shall be, since that would flatly contradict the purposeful deletions and changes in the old statutory scheme already described and the present direct provision of § 301.130–2. The conclusion is compelled that the exception at the end of § 301.130–1 is a vestigial remnant left on the statute books through mere oversight.

■ Relators next rely upon § 301.150 which provides that upon a sale or transfer of the registered vehicle, the original owner shall remove the plates and may assign them to any replacement vehicle acquired by him. This section then goes on to provide that:

"If application for registration of another motor vehicle is not made to the director of revenue within one year following the sale or transfer of ownership of a motor vehicle, the license plates held by the person who sold or transferred

1. All statutory references are to RSMo 1969, unless otherwise specifically stated.

ownership of such motor vehicle shall be declared void, and new license plates bearing the same numbers may be issued to another registrant."

Relators claim that this section clearly means that the numbers assigned have an ownership life of more than one year. They state in their brief that this provision giving a maximum one year period after transfer to reuse the number clearly indicates "that the right to use the number does not expire at the end of a registration period."

The fallacy in this argument is that the registration period may actually be longer than a bare twelve months. This matter is covered by § 301.030, which provides that there shall be 12 registration periods, one for each calendar month. If a vehicle is registered for the first time in the first 15 days of any given month, then the applicable registration period will be the first day of the registration month and the total registration period will actually be somewhat less than one full year. However, it is further provided that "motor vehicles * * operated for the first time on the public highways of this state after the fifteenth day of any given month shall be subject to registration and payment of a fee for the twelve-month period commencing the first day of the next following calendar month." Thus for vehicles falling in this category, the total registration period can be as long as 12½ months. Accordingly, this gives meaning to § 301.150–2 without any implication whatsoever of a continuing ownership right in the license numbers beyond the statutory registration period. This provision is to be read as creating a license life of one year from transfer of the automobile or the end of the registration period, whichever occurs first.

▮ Finally, relators refer to § 301.140 which provides that upon transfer of ownership, the original owner may register another motor vehicle under the same number. However, this section must be read in conjunction with § 301.150 which also provides that an owner may use his old plates on a replacement vehicle if application is made within one year, but this latter section also provides that if the application is not submitted to the Director within that time, then the plates shall be cancelled and "the same numbers may be issued to another registrant." Section 301.140 must also be read in connection with § 301.030–2 which provides that motor vehicles operated in Missouri for the first time shall be subject to registration for a twelve-month period. Read in combination, these sections mean that license plates containing a given set of numbers may be used by the holder during the twelve-month registration period for which the plates were issued, and that such use may be made either upon the vehicle which the holder owned at the commencement of the registration period or upon any replacement vehicle which he may acquire within that period and for which registration application is made within one year of disposition of the original vehicle. No fair inference can be drawn that a right to this given set of numbers is to remain the property of the holder beyond the twelve-month registration period.

▮ A statute is to be interpreted in such a way as to further its purpose and to permit a reasonable implementation thereof. *Household Finance Corporation v. Robertson*, 364 S.W.2d 595 (Mo. banc 1963); *Hawkins v. Missouri State Employees' Retire. Sys.*, 487 S.W.2d 580 (Mo.App.1973); *State ex rel. Slinkard v. Grebe*, 249 S.W.2d 468 (Mo.App.1952); *Roberts v. City of St. Louis*, 242 S.W.2d 293 (Mo.App.1951); *Memmel v. Thomas*, 238 Mo.App. 403, 181 S.W.2d 168 (1944); *Browder v. Milla*, 296 S.W.2d 502 (Mo.App.1956). The general purpose of statutes pertaining to the licensing and registration of motor vehicles is to exercise control over use of the highways and to place on the public records a means of identifying a vehicle and its owner. See 60 C.J.S. Motor Vehicles § 59, p. 404. In Missouri the registration of motor vehicles is a revenue measure, and the attachment of license plates to the vehicle is prima facie evidence that the fees for the privilege of operating a motor vehicle have been paid. § 301.160. Nothing within these general purposes entails any concept of granting

any personal rights to the numbers appearing upon the plates beyond the registration period for which those plates were issued. To recognize a personal right in these numbers, as contended for by relators, would be to exalt the vanity of these holders of low numbers over the public interest and welfare. If relators were correct in their contention here, then not only the holders of low numbers below 10,000 would be entitled to insist on reissuance of their respective numbers, but so also the holder of any other number which happened to appeal to him could likewise insist upon reissuance of that particular number year after year. Such a situation would result in the State being foreclosed from adopting the reasonable and more efficient system of numbering and lettering in combination on each license plate and would undoubtedly considerably increase the cost of administering the automobile licensing system of this State.

Because of the failure of relators to prove a clear, unequivocal, specific right to the reissuance of the specific license numbers claimed by them, the judgment of the trial court is reversed.

All concur.