Ray C. FAULKNER, Appellant,

v.

The STATE of Texas, Appellee.

No. 48399.

Court of Criminal Appeals of Texas.

June 5, 1974.

Cullen H. Landis, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Michael A. Andrews, Asst. Dist. Atty., Houston, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DAVIS, Commissioner.

Appeal is taken from a conviction for using a telephone with intent to harass, annoy and torment another.[1] After the jury returned a verdict of guilty, punishment was assessed by the court at thirty days in jail, probated for one year.

Appellant contends the court erred in admitting into evidence certain telephone company printout sheets for the reason that there was no writing or any other marking on them which in any way connected the record to appellant.

Mrs. Cheryl Nickelson testified that appellant had been office manager at the company where she was employed as a secretary. After she made a complaint to one of the owners of the company regarding difficulty encountered in working with him, appellant's employment was terminated. Mrs. Nickelson stated that shortly thereafter her telephone would ring, at home and at work, and upon picking up the receiver and saying "hello," there would be no response. These calls continued until the day appellant was arrested.

Bill Hubbard, security supervisor for Southwestern Bell Telephone Company, identified State's Exhibit No. 2 as a telephone company record which reflected the results of polarity phone traps. Hubbard explained that a "trap" is placed on anybody's line that is suspected of making a harassing call and then every time a number is dialed at the suspect's telephone the number dialed is printed on the telephone company record by a teletype machine. The record in question reflects numerous calls to Mrs. Nickelson's home telephone number as well as to the telephone number at the office where she worked during the period of time Mrs. Nickelson was receiving the calls in question. Other numbers on the exhibit were identified as numbers called from various suspects' phones not connected with the instant case. The record was admitted into evidence over appellant's objection that it was hearsay and that it did not in any way connect appellant to any phone numbers. After having explained the manner in which the record was made, Hubbard was asked on direct examination what he could adduce as to the place of origin of the calls made to the Nickelson residence. The record reflects the following:

"A. [Hubbard] Based upon this letter that was sent to the security organization along with the letter stating that—

"MR. LANDIS [appellant's counsel]: Now, I object to any letter he has from someone.

"THE COURT: Sustained."

The record reflects the following occurred during cross-examination of Hubbard:

"Q. Will you look at what has been marked as 'State's Exhibit No. 2,' that's the type readout deal?

"A. Yes, sir.

"Q. Anything at all with that type readout, and I want you to look at the whole page up and down to connect that

---

1. See Article 476, Vernon's Ann.P.C., as amended, Acts 1965, 59th Leg., p. 2154, ch. 575, sec. 1.

record in any way with Mr. Faulkner [appellant]?

"A. Mr. Faulkner's name does not appear on here anywhere.

"Q. Any marks, exhibits, descriptions that ties that record in with Mr. Faulkner?

"A. Not on this white piece of paper.

"Q. The only thing you know that ties Mr. Faulkner with this record at all or any exhibit at all is what someone else might have told you; is that correct?

"A. What someone else or this?

"Q. What someone else told you, is that correct?

"A. Yes, sir, based upon this.

" . . .

"Q. . . . But that piece of paper [State's Exhibit No. 2], that readout record, whether or not—what somebody else told you does not in any way connect—except what somebody else told you?

"A. No, sir.

"Q. And there is no telephone numbers on it that connects with it, is that correct?

"A. Correct."

Mrs. Mildred Mader, an anonymous phone call specialist for the telephone company, testified on cross-examination that she could not connect State's Exhibit No. 2 to appellant.

The exhibit does not identify the origin of the telephone calls made to the complaining witness. The witness Hubbard, after having identified the record and explained the manner in which it was compiled, stated that he was dependent upon what someone told him in connecting appellant with the record.

The State urges that the exhibits and testimony taken as a whole connect appellant to the phone calls. Hubbard testified on direct examination that he could tie appellant to the telephone calls in question: "Based on this piece of information that came from Anonymous Call Group, the equipment was tied on the pen register to 864–7803, which is Ray C. Faulkner's telephone number." It appears that the witness was referring to State's Exhibit No. 3 which reflects a record of complaints made in connection with this case and reports of calls by Mrs. Nickelson. On the lower, left-hand corner of one of the sheets in State's Exhibit No. 3, the number "864–7803" and the name "Ray C. Faulkner" appear without any designation, identification or reason stated for the name and number appearing on such sheet. Such entry in Exhibit No. 3 does not tie appellant to State's Exhibit No. 2.

The testimony of Mrs. Nickelson reflects there was no response when she lifted the receiver when the calls in question were made and consequently she was unable to make a voice identification. State's Exhibit No. 2, while reflecting calls made to Mrs. Nickelson, does not show their origin or in any manner connect such calls with appellant. In failing to connect appellant with the calls in question, the State has failed to discharge its burden in proving the offense charged.

The judgment is reversed and the cause remanded.

Opinion Approved by the Court.