The City of Mountain Brook filed a complaint against appellant charging him with committing the crime of harassing communications in violation of Ala. Code § 13A-11-8 (b)(1)(b) (Supp. 1981). The appellant was tried in Jefferson County Circuit Court and the jury found him guilty as charged in the complaint. Following appellant's conviction the trial court conducted a sentence hearing. Taking into consideration appellant's prior "difficulties with the law,"[1] the trial court set his punishment at six months' hard labor in the City of Mountain Brook and, in addition, assessed a fine of $500. (R. 202,206) Appellant gave oral notice of appeal at the conclusion of the sentence hearing. Appellant was subsequently given a hearing on his motion for new trial and the motion was denied.
Omitting its formal parts, the City of Mountain Brook's complaint against appellant reads as follows:
 "Comes now the City of Mountain Brook, Alabama, a municipal corporation and complains that within twelve months before the beginning of this prosecution and within the corporate limits or the police jurisdiction of the City of Mountain Brook, MICHAEL ERIN DONLEY did, on to-wit: the 4th day of February, 1981, with the intent to harass JANE J. MULLINS, made, to-wit: nine (9) telephone calls to the residence of JANE J. MULLINS continuing until early morning hours without a conversation ensuing and with no purpose of legitimate communication contrary to and in violation of Title 13A-11-8, Code of Alabama, 1975. Ordinance Number 796 of the City of Mountain Brook, Alabama declares that all acts or omissions which are misdemeanors under the laws of the State are offenses against the City and that it shall be unlawful for any person to commit any such offense within the corporate limits of the City or its police jurisdiction.
 "Ordinance Number 796 of the City of Mountain Brook, Alabama, was duly adopted by the Mayor and City Council of said City in full compliance with the laws of the State on January 14, 1980 and was in full force and effect on, to-wit: the 4th day of February, 1981." (R. 217)
And for the sake of clarity, we here set out Ala. Code §13A-11-8 (b), under which appellant was convicted, in its entirety:
 "(b) Harassing communications. — (1) A person commits the crime of harassing communications if, with intent to harass or alarm another person he:
 "a. Communicates with a person, anonymously or otherwise, by telephone, telegraph, mail or any other form of written or electronic communication, in a manner likely to harass or cause alarm; or
 b. Makes a telephone call, whether or not a conversation ensues, with no purpose of legitimate communication; or
 c. Telephones another person and addresses to or about such other person any lewd or obscene words or language.
 Nothing in this section shall apply to legitimate business telephone communications.
 "(2) Harassing Communications is a Class C misdemeanor."
Of particular relevancy in the instant prosecution is subparagraph (b) of the above section. As can be seen above, the wording in the complaint substantially follows the language of subparagraph (b). The applicability of this subparagraph to the present facts will be discussed more thoroughly later in the opinion.
Viewing the evidence presented by the prosecution in its most favorable light, as we are required, Livingston v. State,44 Ala. App. 559, 216 So.2d 731 (1968), we find that Ms. Allison Jane Ryan and appellant were married in August of 1978. The couple lived together as husband and wife in an apartment at 1621-A Valley Avenue in the City of Homewood until December 15, *Page 606 
1980 when Ms. Ryan separated from appellant and went to live with her mother, sisters and step-father in their home at 3157 Warrington Road in Mountain Brook. Both Homewood and Mountain Brook are municipalities in Jefferson County. At the time of their separation Ms. Ryan and appellant were the only occupants of their particular apartment. And to Ms. Ryan's knowledge no one besides appellant occupied the apartment after their separation; however, Ms. Ryan did not return to the apartment after December 15. Ms. Ryan testified that at the time she and appellant separated their telephone number at the apartment was 933-8972 and was listed in appellant's name. Ms. Ryan and appellant were divorced on February 6, 1981.
Sergeant B.L. Patterson, a detective from the City of Mountain Brook, stated that he received a complaint from the Mullins' residence at 3157 Warrington Road on January 18, 1981. The nature of the complaint was that the Mullinses were receiving harassing telephone calls. In response to the complaint Sergeant Patterson notified the telephone company and on February 2 requested that tracing equipment be placed on the Mullins' telephone line in order to determine the origin of the harassing calls. As a result of the tracing, a warrant for appellant's arrest was issued on February 4.
Mrs. Josh S. (Jane) Mullins testified that after her daughter, Allison Ryan, returned to the Mullins' home following her separation from appellant, she (Mrs. Mullins) complained to the Mountain Brook Police Department about certain harassing telephone calls she was receiving. "I told the police I had the phone off the hook at 2 a.m. in the morning because I couldn't sleep, my family couldn't sleep. . . ." (R. 25) Mrs. Mullins testified that when she would answer the phone and say "hello" that "sometimes there would be just breathing and sometimes I would just hear a click immediately." (R. 28) Mrs. Mullins stated that she was advised to have the telephone company place a tracer on her telephone line, which she did. "After I talked to the phone company, they asked me to keep a log of the times that I received the hang-up calls." (R. 27) Mrs. Mullins' log for the date in question, February 4, revealed that she received the harassing type calls described above at 1:15 a.m., 1:27 a.m., 1:27 a.m., 1:32 a.m., 1:46 a.m., 6:52 a.m., 7:03 a.m., 10:31 a.m. and 9:36 p.m. "There were two at 1:27, that is because I hung it up and it just rung again and I picked it up again." (R. 28) Nothing was said by the caller during any of the nine calls. Mrs. Mullins testified that she answered all nine of the hang-up calls, that she had instructed each member of the household, including her daughter Allison, not to answer the phone.
Through the testimony of Mr. Elbert Balch and Mr. Nathan Funderburke, both employees of South Central Bell, it was ascertained that, in response to a complaint from the Mullins' residence on January 29, a tracing device or "trap" was placed on the Mullins' telephone line. Subsequent to the "trap" becoming operational it was learned by South Central Bell that the harassing hang-up calls were originating from appellant's telephone number, 933-8972, which was listed at 1621 Valley Avenue, Homewood, Apt. 4. The telephone company's records of the early morning communications received by Mrs. Mullins on February 4 corresponded substantially with the times recorded by Mrs. Mullins in her log for that date. Appellant's telephone at the above address had been installed on September 7, 1978.
At the conclusion of the state's evidence appellant's motion to exclude was overruled. The defense then rested its case without presenting any evidence.
 I
Appellant challenges the constitutionality of the section under which he was convicted. He contends that Ala. Code §13A-11-8 (b)(1)(b) (Supp. 1981) is "so impermissibly vague and overbroad" as to be in violation of the First and Fourteenth Amendments to the United States Constitution and to Article One, § 6 to the Constitution of Alabama. We disagree with this contention and hold that the above statute can be *Page 607 
construed with "narrow specificity" so as to limit its application to conduct that is not protected under the First and Fourteenth Amendments. Ex Parte Frolik, 392 So.2d 846, 847
(Ala. 1981).
We are mindful of the presumption that statutes are constitutional. State v. Spurlock, 393 So.2d 1052 (Ala.Cr.App. 1981). This court will not hold them unconstitutional unless convinced beyond a reasonable doubt of their unconstitutionality. Alabama Dairy Commission v. Food Giant,Inc., 357 So.2d 139 (Ala. 1978). The party challenging the constitutionality of a statute has the burden of establishing its invalidity. Jefferson County Board of Health v. City ofBessemer, 293 Ala. 237, 301 So.2d 551 (1974); Kinney v. State,404 N.E.2d 49 (Ind.App. 1980). A statute susceptible of more than one construction will be so interpreted as to secure the benefit intended, will best effect the legislative intent, and so that it will be constitutional. Alobaidi v. State,433 S.W.2d 440 (Tex.Cr.App.), cert. denied, 393 U.S. 943,89 S.Ct. 313, 21 L.Ed.2d 281 (1968); Accord, State v. Elder,382 So.2d 687, 690 (Fla. 1980); People v. Smith, 89 Misc.2d 789,392 N.Y.S.2d 968 (1977). Although criminal statutes must be strictly construed in favor of those sought to be subject to their operation, the interests of justice demand that criminal statutes not be construed irresponsibly. In construing a statute this court has an obligation to ensure that such construction is in line with common sense and practicality of application. Nobis v. State, 401 So.2d 191 (Ala.Cr.App.), cert. denied, 401 So.2d 204 (Ala. 1981).
As our Supreme Court in addressing the issue of statutory overbreadth wrote in Frolik, supra:
 "State statutes designed to punish spoken words can be upheld if, as authoritatively construed by the state courts, they are narrowly limited in their application to speech that is not protected under the First and Fourteenth Amendments. See, e.g., Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). See generally, Annot., 39 L.Ed.2d 925 (1975). As stated by the United States Supreme Court in Gooding [v. Wilson], supra, at 405 U.S. [518] 521-522, 92 S.Ct. [1103] 1106 [31 L.Ed.2d 408]:
 "The constitutional guarantees of freedom of speech forbid the States to punish the use of words or language not within `narrowly limited classes of speech.' Chaplinsky v. New Hampshire, 315 U.S. 568, 571 [62 S.Ct. 766, 768, 86 L.Ed. 1031] (1942). Even as to such a class, however, because `the line between speech unconditionally guaranteed and speech which may legitimately be regulated, suppressed, or punished is finely drawn,' Speiser v. Randall, 357 U.S. 513, 525 [78 S.Ct. 1332, 1341, 2 L.Ed.2d 1460] (1958), `[i]n every case the power to regulate must be so exercised as not, in attaining a permissible end, unduly to infringe the protected freedom,' Cantwell v. Connecticut, 310 U.S. 296, 304
[60 S.Ct. 900, 903, 84 L.Ed. 1213] (1940). In other words, the statute must be carefully drawn or be authoritatively construed to punish only unprotected speech and not be susceptible of application to protected expression. `Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity.' NAACP v. Button, supra [371 U.S.], at 433 [83 S.Ct., at 338]. (Emphasis supplied by the Supreme Court) 392 So.2d, at 847.
This same rationale is applicable in determining the overbreadth of a statute which proscribes conduct, and not pure speech. Elder, supra; Smith, supra. The Supreme Court of Florida had before it this exact issue in Elder. The statute in that case, § 365.16 (1)(b), reads as follows:
 "Whoever by means of telephone communication: (b) Makes a telephone call, whether or not conversation ensues, without disclosing his identity and with intent to annoy, abuse, threaten, or harass any person at the called number . . . shall be guilty of a misdemeanor of the second degree. . . ." 382 So.2d, at 689.
In upholding the constitutionality of this statute against a challenge of overbreadth the Florida court wrote: *Page 608 
 "We need not, however, pass on whether section 365.16 (1)(b) validly proscribes pure speech. Rather, we disagree with the trial court's characterization of the section as a proscription of pure speech. This statutory provision is not directed at the communication of opinions or ideas, but at conduct, that is, the act of making a telephone call or a series of telephone calls, without disclosing identity and whether or not conversation ensues, with the intent to annoy, abuse, threaten or harass the recipient of the call. Accord, Baker v. State, 16 Ariz. App. 463, 494 P.2d 68 (1972). Cf. S.H.B. v. State, 355 So.2d 1176 (Fla. 1978). That this conduct may be effected in part by verbal means does not necessarily invalidate the statute on freedom of speech grounds. At most, the use of words as the method with which to harass the recipient of the call involves conduct mixed with speech, to which the controlling constitutional considerations differ somewhat from those applied to pure speech. Specifically, with regard to overbreadth, the applicable test is stated in Broadrick v. Oklahoma, 413 U.S. 601, 615, 93 S.Ct. 2908, 2918, 37 L.Ed.2d 830 (1973): `[W]here conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.` As construed below, section 365.16 (1)(b) is clearly applicable to a whole range of activity which is easily identifiable and which constitutionally may be proscribed. See Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439
(1974). We hold, therefore, that the asserted overbreadth of section 365.16 (1)(b) is not real and substantial judged in relation to the statute's plainly legitimate sweep. "In construing section 365.16 (1)(b), we are mindful of our responsibility to resolve all doubts as to the validity of a statute in favor of its constitutionality, provided the statute may be given a fair construction that is consistent with the federal and state constitutions as well as with the legislative intent. State v. Keaton, 371 So.2d 86 (Fla. 1979); White v. State, 330 So.2d 3 (Fla. 1976). The Court will not, however, abandon judicial restraint and invade the province of the legislature by rewriting its terms. State v. Keaton; Brown v. State, 358 So.2d 16 (Fla. 1978). In dealing with statutory regulation of first amendment activity, this Court has in the past strictly construed a challenged statute to uphold it against vagueness or overbreadth attacks. See, e.g., State v. Saunders, 339 So.2d 641 (Fla. 1976); White v. State, supra. After careful consideration we, likewise, here conclude that the language of section 365.16 (1)(b) is fairly susceptible to a constitutional construction that is consistent with the legislative intent." 382 So.2d, at 690, 691
And the Supreme Court of Colorado in People v. Weeks,197 Colo. 175, 591 P.2d 91 (1979), in upholding the constitutionality of a Colorado statute proscribing telephone harassment[2] recognized that the doctrine of overbreadth is used sparingly, because a statute which has been found overbroad may not be used as the basis for prosecution in any case. In Weeks
the defendant suggested "several ingenious examples of constitutionally protected communications which could result in prosecution" under the contested statute. The Colorado court flatly rejected that argument by stating that the "defendant did not engage in any activity of that nature." 591 P.2d, at 94.
The Court of Appeals of Indiana likewise upheld the constitutionality of an harassment statute against a vagueness challenge. In Kinney, supra the complaining witness *Page 609 
received a total of 126 calls within a ten-day period. During some of the calls the defendant accused her of promiscuous sexual behavior; additional calls were received in which no conversation ensued. No personal or business transactions occurred during these telephone calls to indicate any purpose other than harassment. The Indiana statute in question is similar to Section 13A-11-8 (b)(1)(b) and reads in pertinent part:
 "HARASSMENT. — (a) A person who, with intent to harass, annoy, or alarm another person but with no intent of legitimate communication: (1) makes a telephone call, whether or not a conversation ensues . . . commits harassment. . . ." 404 N.E.2d, at 50.
The Indiana court answered the vagueness challenges against this statute as follows:
 "In Indiana, the test for determining if a statute is unconstitutionally vague was set forth in Hunter v. State (1977), Ind. App., 360 N.E.2d 588, at 594:
 "`A statute will not be found unconstitutionally vague if individuals of ordinary intelligence would comprehend it to adequately inform them of the conduct to be proscribed.' [Citations omitted]
 "See also: Rogers v. State, (1978), 267 Ind. 654 373 N.E.2d 125. If the language of a statute is sufficiently definite to inform an average man of the conduct which is prohibited, then the statute is valid. Total clarity of purpose is an important goal, but absolute precision is not a constitutional requirement. State v. Bigbee (1973), 260 Ind. 90, 292 N.E.2d 609.
. . . .
 "Statutes which have been ruled unconstitutionally vague have been so broad that a determination could not be made as to what conduct violated the statute.
. . . .
 "The harassment statute which is being challenged in this case forbids a specific act, a telephone call, when it is accompanied by a specific intent, `to harass, annoy, or alarm another person but with no intent of legitimate communication.' This specific intent prevents the statute from being unconstitutionally vague. As the United States Supreme Court has stated,
 "`. . . An evil motive to accomplish that which the statute condemns becomes a constituent element of the crime. . . . [Citations omitted]
* * * * * *
 ". . . The Court, indeed, has recognized that the requirement of a specific intent to do a prohibited act may avoid those consequences to the accused which may otherwise render a vague or indefinite statute invalid. The constitutional vice in such a statute is the essential injustice to the accused of placing him on trial for an offense, the nature of which the statute does not define and hence of which it gives no warning. . . . But where the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law.' [Citations omitted] Screws v. United States, (1945) 325 U.S. 91, at 101-102, 65 S.Ct. 1031, 1035-1036, 89 L.Ed. 1495.
 "The specific intent requirement precludes the application of this statute to constitutionally protected legitimate communications. The potential offender receives the necessary specificity of warning by the language of the statute. United States v. National Dairy Corp. (1963) 372 U.S. 29, at 35, 83 S.Ct. 594, at 599, 9 L.Ed.2d 561." 404 N.E.2d, at 50, 51.
And in People v. Smith, 89 Misc.2d 789, 392 N.Y.S.2d 968
(1977) the defendant made 27 telephone calls during a 3 hour and 30 minute period to a particular police department in regard to a complaint he had made, despite being repeatedly told not to call again because he was tying up police lines. The defendant was charged with aggravated harassment in violation of New York Penal Law § 240.30. Subdivision 2 of § 240.30 is substantially similar to Section 13A-11-8 (b)(1)(b). It provides that a person is guilty of aggravated harassment under subdivision two: *Page 610 
 "When, with intent to harass, annoy, threaten or alarm another person, he: Makes a telephone call, whether or not a conversation ensues, with no purpose of legitimate communication."
The Supreme Court of New York in deciding the constitutionality of this statute wrote the following:
 "This subdivision `embraces an offense defined in former Penal Law § 1423 (6) — tieing up business telephone lines by repeated calls — but is substantially broader in that it also covers the presently unpenalized practice of driving a a person to distraction by repeatedly dialing his number.' (Commission Staff Note, Penal Law § 240.30, subd. 2; emphasis added). "Although defendant initially had a `purpose of legitimate communication,' the record is clear that, at least as to the later calls, his intent was not to communicate but solely to harass. With regard to defendant's constitutional challenge, we note that this `form of trespass' would not be entitled to constitutional protection even if there had been an intention to communicate. [Citations omitted] Moreover, the language of subdivision two does not suffer from vagueness. In any case, defendant, to whom it clearly applied, may not successfully challenge it on this ground. [Citations omitted] 392 N.Y.S.2d, at 970.
See also, People v. Green, 63 Misc.2d 435, 312 N.Y.S.2d 290
(1970) where the defendant made 35 "ring and hang up" telephone calls in one day.
The defendant in Constantino v. State, 243 Ga. 595,255 S.E.2d 710 (1979) was charged with "Using a telephone for the purpose of harassment" after he had made 54 hang up calls in a three hour period one day. There was some question inConstantino as to which of two Georgia statutes was applicable. The Georgia Supreme Court set out both statutes for consideration:
 "Code Ann. § 26-2610 states: `A person who commits any of the following acts is guilty of a misdemeanor: . . . (e) Telephones another repeatedly, whether or not conversation ensues, for the purpose of annoying, harassing or molesting another or his family, or uses over the telephone language threatening bodily harm . . .' Code Ann. § 104-9901 provides that the following act is a misdemeanor: `Whoever by means of telephone communication in this State: . . . (b) makes a telephone call, whether or not conversation ensues, without disclosing his identity and with intent to annoy, abuse, threaten, or harass any person at the called number.'" 255 S.E.2d, at 713.
The defendant contended that the language was so vague and broad as to unconstitutionally violate due process requires. In addressing that issue the Georgia Court wrote the following in upholding the constitutionality of the two statutes:
 "Due process only requires that a statute convey a `sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.' United States v. Petrillo, 332 U.S. 1, 8, 67 S.Ct. 1538, 1542, 91 L.Ed. 1877 (1947). The plain meaning of the two statutes in question is that an individual may not make telephone calls for the purpose of harassing someone. The statutes are clear and could be readily understood by people of ordinary intelligence seeking to avoid their violation. See, Lanthrip v. State, 235 Ga. 10, 218 S.E.2d 771 (1975), see also, Haisman v. State, 242 Ga. 896, 897, 252 S.E.2d 397 (1979).
 "Appellant's primary complaint is that `what is or is not harassing, annoying or bothersome is merely a question of one's own interpretation.' Presumably what appellant means by this is that a defendant telephoning someone could never know if he is harassing that person since what may be harassing to that person might not be harassing to another, i.e. the defendant will never know if he is committing a crime or not. The fallacy in this theory is that the victim's subjective ideas on what is or is not harassing are not in issue. The point is that the defendant telephones intending to harass and the defendant certainly knows if he is doing that." 255 S.E.2d, at 713. *Page 611 
We find the foregoing principles of law, as they are applied to the facts in the preceding cases, to be persuasive in upholding the constitutionality of Section 13A-11-8 (b)(1)(b) against vagueness and over-breadth challenges. Section13A-11-8 (b)(1)(b) requires a specific act, a telephone call, when it is accompanied by a specific intent, "to harass or alarm another person" with "no purpose of legitimate communication." Section 13A-11-8 (b) contains a further safeguard against infringing upon constitutionally protected area by specifically providing that it has no application to "legitimate business telephone communications." We believe that a potential offender sufficiently receives the necessary specificity of warning by the language in the statute. In our opinion the statute is clear and can be readily understood by persons of ordinary intelligence seeking to avoid its violation.
Appellant cites three cases which he contends support his proposition that § 13A-11-8b (b)(1)(b) is unconstitutionally vague and overbroad: People v. Klick, 66 Ill.2d 269, 5 Ill.Dec. 858, 362 N.E.2d 329 (1977); State v. Blair, 287 Or. 519,601 P.2d 766 (1979) and State v. Dronso, 90 Wis.2d 149,279 N.W.2d 710 (1979). We find the statutes under attack in these cases to be distinguishable from § 13A-11-8 (b)(1)(b). It is helpful to distinguish each one of these cases separately.
In Klick the defendants were charged under a disorderly conduct statute which provided:
 "A person commits disorderly conduct when he knowingly:
. . . .
 "(2) With intent to annoy another, makes a telephone call, whether or not conversation thereby ensues; . . ." 5 Ill.Dec., at 859, 362 N.E.2d, at 330.
The Illinois Supreme Court declared this statute to be unconstitutionally overbroad because the statute "could apply to conduct other than that which might provoke a breach of the peace." 5 Ill.Dec., at 860, 362 N.E.2d, at 331.
 "We do not suggest that the first amendment gives one the unlimited right to annoy another, by speech or otherwise. There are, however, many instances when, without breaching the peace, one may communicate with another with the possible intention of causing a slight annoyance in order to emphasize an idea or opinion, or to prompt a desired course of action that one is legitimately entitled to seek. Conceivably, this section could make criminal a single telephone call made by a consumer who wishes to express his dissatisfaction over the performance of a product or service; a call by a businessman disturbed with another's failure to perform a contractual obligation; by an irate citizen, perturbed with the state of public affairs, who desires to express his opinion to a public official; or by an individual bickering over family matters. First amendment protection is not limited to amiable communications. [Citations omitted] Arguing with another, for example, is not disorderly conduct per se.
 "The legislature cannot abridge one's first amendment freedoms merely to avoid slight annoyances caused to others. [Citations omitted]. Section 26-1 (a)(2), however, by its very terms, would proscribe any call made with the intent to annoy, regardless of its purpose or nature. It would daily subject countless callers to the stigmatization of the criminal process at the election of their listeners who might perceive the call as having been made with the intent to annoy. Such an unlimited intrusion on first amendment freedom is not permitted." 5 Ill.Dec., at 860, 861, 362 N.E.2d, at 331, 332.
The Illinois Court specifically recognized, however, that the state has a legitimate interest in protecting the privacy of its citizens from certain types of perverse telephone calls and intimated that a properly drawn statute would pass constitutional muster against challenges for overbreadth. In viewing the challenged statute in light of legitimate state interests the court wrote: *Page 612 
 "Presumably it was the legislature's intent to ban the type of unreasonable conduct which by its very nature attacks the individual's peace of mind and solitude: e.g., terror caused to an unsuspecting person when he or she answers the telephone, perhaps late at night, to hear nothing but a tirade of threats, curses, and obscenities, or, equally frightening, to hear only heavy breathing or groaning. Clearly, this is not the type of conduct
 which is protected by the first amendment." [Emphasis added] 5 Ill.Dec., at 861, 362 N.E.2d, at 331.
Section 13A-11-8 (b)(1)(b) is distinguishable from the Illinois statute in that it requires more than just an "intent to annoy" for a violation to occur. It requires an "intent to harass or alarm" with "no purpose of legitimate communication." Moreover, the examples of constitutionally permissible telephone communications cited by the Illinois court, which possibly could have been proscribed by the Illinois statute, could not be proscribed under Section 13A-11-8 (b). This is so because of the concluding sentence to Section 13A-11-8 (b)(1) which reads: "Nothing in this section shall apply to legitimate business telephone communications." This sentence specifically excludes those types of constitutionally protected conduct whereas the Illinois statute did not.
In Blair the defendant was charged under an Oregon harassment statute which provided in pertinent part:
 "A person commits the crime of harassment if, with intent to harass, annoy or alarm another person, he:
 (c) Communicates with a person anonymously or otherwise, by telephone, mail or other form of written communication, in a manner likely to cause annoyance or alarm. . . ." 601 P.2d, at 767.
The Supreme Court of Oregon declared this statute unconstitutional for vagueness:
 "[W]e find that paragraph (c) itself communicates either too little or too much, apart from the claimed restraint of freedom of speech. The state and the Court of Appeals rely on the requirement of a specific intent to `harass, annoy or alarm another person' to save the statute from impermissible vagueness. But specification of the element of intent does nothing to define what someone who wishes to harass, annoy or alarm another may not do in pursuit of that disagreeable aim. True enough, his intent makes his defense of lack of fair notice less appealing, but it does not meet it; and the argument fails to address the other reasons mentioned above for requiring legislative specification of crimes.
 "Examination of paragraph (c) shows that the communication proscribed by the statute need not cause any harm at all, in the form of annoyance, alarm, or otherwise. It is sufficient if the manner of communication is in fact `likely' to do so, whether the defendant knew this or not. Messages that are likely to cause `annoyance' or `alarm' are almost limitless; we will not burden this opinion with hypothetical examples of letters from creditors, employers, angry parents, disappointed customers, jealous lovers, or followers of opposing athletic teams that could theoretically lead to filing a criminal complaint. Nor is the statute limited to intentionally causing or attempting to cause another such actual distress after knowing, from an earlier attempt or otherwise, that one's act will do so, and without any legitimate purpose." [Emphasis added] 601 P.2d, at 768, 769.
While the above Oregon statute is similar to Section13A-11-8 (b)(1)(a), we are not deciding the constitutionality of Section 13A-11-8 (b)(1)(a). The issue before us is the constitutionality of Section 13A-11-8 (b)(1)(b). Moreover, we are not bound by Oregon decisions. It should be pointed out, too, that ORS 166.065 (1) does not contain the "legitimate business telephone communications" exclusion as does Section13A-11-8 (b). The Oregon and Alabama Statutes are thus not analogous for this reason as well.
Finally, in Dronso the defendant was charged under a Wisconsin disorderly conduct statute which proscribed "making a *Page 613 
telephone call with intent to annoy another, whether or not conversation ensues." 279 N.W.2d, at 712. The Court of Appeals of Wisconsin declared this statute unconstitutionally overbroad:
 "A statute which subjects a telephone caller to criminal sanctions of fine or imprisonment for calling with intent to annoy, whether or not conversation ensues, is overbroad as it may reasonably be interpreted to prohibit free speech which is constitutionally protected by both the United States and Wisconsin Constitutions. The reason this statute sweeps too broadly is that there are times when citizens make legitimate calls with the intent to annoy the recipient of the call, e.g., a consumer calling the seller or producer of a product to express dissatisfaction of product performance, a businessman calling another to protest failure to perform a contractual obligation, a constituent calling his legislator to protest the legislator's stand on an issue, etc. These types of calls would all come under the broad sweep of the statute. Such proscription would be a real and substantial interference with free speech." 279 N.E.2d, at 714.
Again, Section 13A-11-8 (b)(1)(b) is clearly distinguishable. The Wisconsin statute could proscribe a telephone call where the purpose of the call was "legitimate communication;" Section13A-11-8 (b)(1)(b) could not proscribe such conduct. The Wisconsin statute could also apply to "legitimate business telephone communications;" Section 13A-11-8 (b) could not.
Because the statutes in the cases cited by appellant are distinguishable from the language in Section 13A-11-8 (b)(1)(b), we do not find those cases controlling. There can be no question that the telephone can be used as an instrument to harass or alarm[3] and that the state has a legitimate interest in proscribing such intentional conduct when there is no purpose of legitimate communication. We believe Section13A-11-8 (b)(1)(b) to be properly framed within contitutional parameters to accomplish its intended purpose.
 II
Appellant next contends that the City of Mountain Brook did not have jurisdiction to prosecute this cause since the undisputed evidence proved that the telephone calls originated in the City of Homewood. We are mindful that jurisdiction of the offense and of the person must concur to authorize a court of competent jurisdiction to proceed to final judgment in a criminal prosecution. Goulden v. State, 292 Ala. 704,299 So.2d 325 (1974). Appellant's basic argument on this issue is that if any violation occurred it occurred in Homewood where the calls were dialed, not in Mountain Brook where the calls were received by Mrs. Mullins. We disagree with appellant's reasoning and find that harassing communications were made in Mountain Brook. We find, therefore, that jurisdiction in this cause, both as to subject matter and of appellant's person, was properly lodged in Mountain Brook.
Some background into the trial proceedings of this cause is helpful at this point. Appellant was initially tried in Mountain Brook Municipal Court. He appealed from an unfavorable judgment there to Jefferson County Circuit Court for trial de novo in accordance with Ala. Code § 12-14-70 (a) (Supp. 1981).
It is clear, as appellant contends, that the municipal court of Mountain Brook, where the cause was originally brought, is a court of limited jurisdiction. Williams v. State, 171 Ala. 56,54 So. 535 (1911). As a matter of law Mountain Brook, like any other municipality, only has jurisdiction to prosecute violations of its ordinances which occur within its police jurisdiction. Ala. Code § 12-14-1 (b) (1975) provides:
 "The municipal court shall have jurisdiction of all prosecutions for the breach of the ordinances of the municipality within its police jurisdiction."
This jurisdiction, or authority, includes the prosecution of misdemeanor offenses under *Page 614 
state law. Mountain Brook Ordinance Number 796 specifically states that acts which constitute misdemeanors under state law are also offenses against the City.[4] Simply put, for the City of Mountain Brook to have jurisdiction to prosecute the violation of one of its ordinances the violation must occur within the limits of its police jurisdiction.
It is just as certain that a municipal court's jurisdiction cannot be extended by an appeal for trial de novo on the same prosecution to the circuit court level. In other words, for the circuit court to have correctly had proper jurisdiction on trial de novo in this cause, it was necessary for Mountain Brook to have initially had proper jurisdiction over the prosecution. Because the harassing communications occurred within the police jurisdiction of Mountain Brook, we are convinced that the municipal court did have proper jurisdiction over the prosecution initially, and that the circuit court's subsequent jurisdiction at the trial de novo was likewise proper.
Furthermore, the complaint which was brought against appellant by the City of Mountain Brook at the circuit court level specifically avers that appellant made the harassing communications to the residence of Jane J. Mullins "within the corporate limits or the police jurisdiction of the City of Mountain Brook." Thus, it was incumbent upon the City of Mountain Brook to prove that appellant made the telephone callsto the Mullins' residence within its corporate limits or police jurisdiction in any event.
As we stated previously, we believe that the harassing communications were made within the corporate limits or police jurisdiction of Mountain Brook. This is so because the harassing communications were received at the Mullins' end of the telephone line in Mountain Brook. Whether or not "dialing" is the equivalent of "communication" is not the issue before us. See, People v. Green, 63 Misc.2d 435, 312 N.Y.S.2d 290
(1970). It is clear, however, that the crime of harassing communications does require some "communication." In this case the Mullins' telephone ringing and Mrs. Mullins answering it only to hear breathing or a hang up click constituted "communication." As the criminal court of the City of New York stated: "The unwanted receiver of 35 calls on a `ring and hang up' gets the message." Green, supra, 312 N.Y.S.2d, at 293, 294. The "communications" that were received at the Mullins' residence occurred in Mountain Brook.
Finally, appellant places much emphasis on the fact that repealed statute Section 37-8-214 delineated between where the call was made and where it was received, making it possible for the offense to occur at either location. We do not find the presence of such delineation in the repealed statute or the absence of such delineation in Section 13A-11-8 (b)(1)(b) to be of any consequence to a resolution of the issue of jurisdiction. Section 13A-11-8 (b)(1)(b) contains the phrase "makes a telephone call." There is no requirement or mandate in this phrase or elsewhere in Section 13A-11-8 (b)(1)(b), as appellant contends, that a prosecution for harassing communications can only be had in the jurisdiction where the telephone is dialed. Clearly, this is not so. To adopt such interpretation would be to read into the statute more than is provided. Certainly a telephone call can be made to a person as well as from a person. The complaint, as pointed out above, avers that the telephone calls were made to the residence of Jane J. Mullins in Mountain Brook. This averment was proved by the prosecution. The violation of Section 13A-11-8 (b)(1)(b) occurred then within the police jurisdiction of Mountain Brook. This being the case, the City of Mountain Brook was properly vested with jurisdiction for the prosecution of the offense under Section 12-14-1 (b).
 III
Appellant alleges that the state's evidence was insufficient to prove his guilt beyond a reasonable doubt and that his *Page 615 
motion to exclude the evidence should have been granted. Appellant contends that the evidence adduced by the City of Mountain Brook failed to connect him personally as the person placing the telephone calls to the Mullins' residence, despite the fact that the calls originated from his number. He cites four cases from other jurisdictions in support of his argument:Evans v. State, 382 So.2d 1084 (Miss. 1980); Steinhauser v.State, 577 S.W.2d 257 (Tex.Cr.App. 1979); Faulkner v. State,510 S.W.2d 91 (Tex.Cr.App. 1974); State v. Hulsey, 15 Ohio App.2d 153, 239 N.E.2d 567 (1968).
Based on the facts and circumstances in this case, which have been previously set out above, we disagree with appellant's contention and find that the evidence presented by the City of Mountain Brook was sufficient to prove appellant's guilt beyond any reasonable doubt and was, thus, sufficient to support the jury's verdict. As the cases cited by appellant are in no wise controlling upon the decisions of this court, there is no need to factually distinguish them in this opinion. Instead, we here rely on the precedent of our Supreme Court and on prior decisions by this court as authority in affirming the sufficiency of the circumstantial evidence presented by the City of Mountain Brook.
Circumstantial evidence standing alone, even in a prosecution for murder, is sufficient to support a conviction. Dolvin v.State, 391 So.2d 133 (Ala. 1980); Hayes v. State, 395 So.2d 127
(Ala.Cr.App.), cert. denied, 395 So.2d 150 (Ala. 1981); Cumbov. State, 368 So.2d 871 (Ala.Cr.App. 1978), cert. denied,368 So.2d 877 (Ala. 1979). The principles concerning circumstantial evidence which are set out in these cases are fully applicable here. We see no need to recite those principles in this opinion. We would state, however, that circumstantial evidence is not inferior evidence, and will support a conviction as strongly as direct evidence provided it points to the guilt of the accused. Gullatt v. State, 409 So.2d 466 (Ala.Cr.App. 1982). The jury is under a duty to draw whatever permissible inferences it may from circumstantial evidence and base its verdict on whatever permissible inferences it chooses to draw.Kontos v. State, 363 So.2d 1025, 1034 (Ala.Cr.App. 1978);Hayes, supra. Moreover, it is not the function of this court to reweigh the evidence or substitute its judgment for that of the jury. Cumbo, supra. In applying the principles of law which govern the sufficiency of circumstantial evidence to all of the facts and circumstances in this case, we find the jury's verdict well supported.
 IV
Despite appellant's contention to the contrary, it is our opinion that, due to the repetition of appellant's calls, he intended to harass Jane J. Mullins as is alleged in the complaint. No one besides Mrs. Mullins answered the nine telephone calls made by appellant on the date in question and yet he persisted in calling. Intent, being a mental purpose or state of mind, is rarely susceptible of direct proof. Intent, then, may be inferred by the jury from the evidence presented at the trial. Hall v. State, 348 So.2d 870, 873 (Ala.Cr.App.) cert. denied, 348 So.2d 875 (Ala. 1977). We find no variance between the allegations in the complaint and the proof.
 V
Appellant alleges that the trial court committed reversible error in allowing prosecution witnesses Elbert Balch and Nathan Funderburke from South Central Bell to testify as experts concerning the tracing procedure that was followed and the operation of the tracing equipment. There is no merit to this contention. The testimony of these two witness consisted largely of factual data and was not unlike that of the South Central Bell employee in Babies v. State, 56 Ala. App. 37,318 So.2d 777, cert. denied, 294 Ala. 752, 318 So.2d 719 (1975).
As this court stated in Gullatt, supra:
 "The question of whether or not a particular witness will be allowed to testify as an expert is largely discretionary with the trial court, whose decision will not be disturbed on appeal except for palpable abuse. Kozlowski v. State, 248 Ala. 304, *Page 616 27 So.2d 818 (1946); Davis v. State, 352 So.2d 3
(Ala.Cr.App.), cert. denied, 352 So.2d 8 (Ala. 1977). An individual may qualify as an expert witness by study, practice, experience or observation. Radney v. State, 342 So.2d 942 (Ala.Cr.App.), cert. denied, 342 So.2d 947 (Ala. 1977). An expert witness is one who can enlighten a jury more than the average man in the street. Carlton v. State, 342 So.2d 1382
(Ala.Cr.App. 1977). Also see C. Gamble, McElroy's Alabama Evidence § 127.01 (5) (3rd Ed. 1977)." 409 So.2d 472
We find no abuse of discretion in the trial court's rulings on this issue. Both Mr. Balch and Mr. Funderburke testified that the tracing equipment was reliable.
 VI
After the verdict was returned it was learned that certain legal books, xerox copies of civil cases, civil pleadings and extraneous materials had been left in the window sills of certain windows in the jury room during the jury deliberations. Appellant moved for a mistrial, or in the alternative a new trial, at the time this discovery was made. The trial judge then entered the jury room and made the following findings in denying appellant's motion:
 "We are now in the jury room. Let the record show that the court has examined the jury room after Mr. Clark brought to the attention of the court there was some various papers back in the jury room. The court has examined the jury room and finds that in one window of the jury room there are stacks of various books to be civil files and papers and xerox copies of law citations and legal pads and a copy of the Alabama Reports there. I assume that the Alabama Report in one window and in the other window at least on the sill on that window and on the sill of this other window over here, more papers consisting of xerox copies of legal authorities, some magazines, extraneous magazines and other copies of papers, pleadings and things like that and also a copy of the bench sheet of this other report. There is no indication of any of the papers being around in the chairs or on the table or anything where the jury, I assume deliberated. These papers are just things stacked in the windows and the Court at this time doesn't feel that any jurors were influenced by any of these papers and is denying your motion at this time. Mr. Clark, I will give you time to file a written motion for a new trial on that ground." (Emphasis added) (R. 188-189)
No proof was offered at the hearing on appellant's motion for new trial that any of the materials had been perused by the jurors or that the jurors had been affected in any way by those articles which had been left in the jury room. We find no indication that any of the jurors were improperly influenced by the extraneous materials. Each case of improper conduct possibly influencing a jury must be judged by its particular facts. Allred v. State, 55 Ala. App. 74, 313 So.2d 195, cert. denied, 294 Ala. 751, 313 So.2d 203, cert. denied,423 U.S. 859, 96 S.Ct. 113, 45 L.Ed.2d 86 (1975). Whether or not a mistrial should be granted is within the sound discretion of the trial judge who is in a position to determine what effect, if any, some occurrence may have had on a jury's ability to decide an accused's fate fairly and justly. Minnifield v.State, 392 So.2d 1288 (Ala.Cr.App. 1981). We find no abuse of discretion in this case. Any error in this instance was harmless at most. ARAP, Rule 45.
 VII
Appellant contends as his final allegation of error that his sentence of six months' hard labor for the City of Mountain Brook exceeds the maximum sentence the circuit court could lawfully impose. Ala. Code § 12-14-70 (e) (Supp. 1981) provides that, upon a trial de novo in the circuit court on appeal from municipal court, the circuit court "may impose any penalty or sentence which the municipal court could have imposed." Appellant argues that the City of Mountain Brook, by declaring in Ordinance No. 796 that all misdemeanors under state law are also offenses against the city, not only adopted the substantive *Page 617 
offenses, but also adopted the corresponding punishment under state law. Specifically, appellant contends that since the crime of harassing communications is a Class C misdemeanor under Ala. Code § 13A-11-8 (b)(2) (Supp. 1981), the maximum sentence that could be imposed against him is three months' imprisonment as provided under Ala. Code § 13A-5-7 (a)(3) (Supp. 1981). We disagree.
Mountain Brook City Ordinance No. 796 simply adopts the substantive offenses which are codified as misdemeanors under state law; it does not adopt by reference the state punishments which are provided for these offenses.[5] This procedure could have been followed by the City of Mountain Brook, but was not. Nor have we been cited to any statute or other authority which would require such result.
Appellant in this case was prosecuted by the City of Mountain Brook for violating its Municipal Ordinance No. 796 which incorporated by reference Section 13A-11-8 (b)(1)(b) proscribing harassing communications. Penalties which may be imposed for violations of municipal ordinances are set out in Alabama Code § 11-45-9 (1975). Section 11-45-9 (b) specifically provides:
 "No fine shall exceed $500.00, and no sentence of imprisonment or hard labor shall exceed six months."[6]
There is no requirement that the punishment for violation of a municipal ordinance and a state statute which proscribes the same act be the same.
 "[T]he punishment or penalty imposed by municipal corporations for violation of their ordinances or regulations may differ from the punishment or penalty prescribed by state law for the same offense, and more specifically, it has been held that greater or lesser penalties than those that are prescribed by state law may be provided for by ordinance. . . ."
C.J.S. Municipal Corporations § 178 (1949).
When the state has not preempted the field, the same offense may be proscribed by both state and local legislation and the penalties may be different. Chester Tp. v. Panicucci, 62 N.J. 94, 299 A.2d 385 (1973). That the penalty provided for an offense is not the same under city ordinance and state law does not render the ordinance invalid provided the penalty is not in excess of that which the municipality has been granted the authority to impose. State v. Weeks, 216 Minn. 279,12 N.W.2d 493 (1943). Moreover, a municipal ordinance may impose a heavier penalty for an offense than a state statute imposes for the same act in violation of the statute. City of Fort Scott v.Arbuckle, 165 Kan. 374, 196 P.2d 217 (1948). Because appellant's sentence was fixed within the proper limitations of Section 11-45-9 (b), we find no error.
We have carefully examined each issue raised by appellant and have found no error prejudicial to his substantial rights. The circuit court's judgment of conviction is, therefore, due to be affirmed.
AFFIRMED.
All the Judges concur.
[1] Appellant, twenty-five years of age, had two prior felony convictions: one for grand larceny, the other for buying, receiving or concealing stolen property. Appellant had also been convicted of a variety of prior misdemeanors including assault, carrying a concealed weapon, reckless driving, and numerous other traffic violations.
[2] The Colorado statute under consideration, Section 18-9-111 (1)(e), C.R.S. 1973 (1976 Supp.) provides:
"HARASSMENT. (1) A person commits harassment if, with intent to harass, annoy, or alarm another, he:
. . . .
(e) Initiates communication with a person, anonymously or otherwise by telephone, in a manner intended to harass or threaten bodily harm or property damage, or makes any comment, request, suggestion, or proposal by telephone which is obscene. . . ."
[3] See Annot., 95 A.L.R.3d 411 (1979).
[4] This procedure is proper. See State v. Town of Springville,220 Ala. 286, 125 So. 387 (1929); Casteel v. City of Decatur,215 Ala. 4, 109 So. 571 (1926).
[5] See Lowery v. City of Boaz, 393 So.2d 534, 538 (Ala.Cr.App. 1981), where the City of Boaz did, specifically, provide in its Ordinance No. 454 "that the punishment for a violation or offense involving said state misdemeanor statutes shall be that as set by state law."
[6] See Lake v. City of Birmingham, 390 So.2d 36, 38 (Ala.Cr.App. 1980) for an example of where a defendant was convicted of violating a municipal ordinance which adopted a state criminal statute and was sentenced under Section 11-45-9. It is true that in Lake, supra, the maximum sentence would have been six months' imprisonment either under Alabama Code § 13-9-2 (1975), the statute adopted by Birmingham City Code § 36-56, or under Section 11-45-9. However, Lake, supra, demonstrates that Section 11-45-9 was the provision followed in fixing the defendant's punishment, not Section 13-9-2. 390 So.2d, at 38. Moreover, there is no indication in Lake, supra, as there was in Lowery v. City of Boaz, 392 So.2d 534 (Ala.Cr.App. 1981) that the City of Birmingham had an ordinance which specifically adopted state law punishment for violation of particular misdemeanors. *Page 618