I can find no support in either Rule 32, Ala.R.Crim.P., or Barnes v.State, 621 So.2d 329 (Ala.Crim.App. 1992), for the proposition that this Court has the authority, over an objection by the State, to allow the record on a pending direct appeal to effectively be supplemented in a Rule 32 proceeding to preserve an issue for appellate review that was not raised on the record during the initial trial and, therefore, could not have been properly raised and reviewed on the direct appeal. I must therefore respectfully dissent.
I was not a member of this Court when Barnes was decided, and I hesitate to assail or to defend its underlying rationale. However, I cannot help but question the propriety of the remand procedure that was apparently approved in Barnes and that the majority relies on in this case. Under that procedure, this Court may suspend the Alabama Rules of Appellate Procedure and eliminate altogether the jurisdictional requirement of filing a notice of appeal from the denial of a Rule 32 petition. I would suggest that this Court should revisit Barnes at some point, at least with respect to that particular issue. But even assuming that there is authority to support that aspect of the procedure adopted in Barnes, there are more fundamental problems with the majority's approach in the present case.
The record of the Rule 32 proceedings that was certified to this Court clearly indicates that the sole purpose of Wilson's Rule 32 petition was (1) to challenge her life-without-parole sentence, based on the Eighth Amendment to the United States Constitution and on Article I, § 15, of the Alabama Constitution of 1901, and (2) to introduce the affidavit of the circuit judge who presided over her trial as evidence that Wilson's Eighth Amendment issue was properly preserved at trial. The affidavit, which was admitted into evidence in support of Wilson's Rule 32 petition over the State's objection, provided, in pertinent part:
 "Secondly, counsel argued whether the penalty of life imprisonment without parole violated the Eighth Amendment to the Constitution of the United States which prohibits the invocation of cruel and unusual punishment. [This issue was] raised on several occasions, in and out of chambers, but [does] not appear on the record."
(C.Supp. 57.)
The circuit court denied Wilson's Rule 32 petition on the merits, concluding that it had no "jurisdiction to review a sentence when the punishment is imposed within the limits defined by the punishing statute." The majority, relying on Barnes, holds that the federal constitutional issue that Wilson raised on direct appeal was properly preserved at her trial. The majority_bases that holding on the record created in theRule 32 proceedings. I find the majority's approach to be unprecedented and more than a little troubling.
Barnes, on its face, was an attempt by this Court to craft a workable procedure that, among other things, allows a Rule 32 petition filed during the pendency of a direct appeal to be adjudicated in the circuit court and then allows the circuit court's ruling on that Rule 32 petition to be reviewed simultaneously with this Court's review of the pending appeal. The underlying rationale of Barnes was ultimately grounded in this Court's desire for judicial economy. However, I can find nothing inBarnes that dissolved or otherwise diminished the basic, historic distinction this Court has maintained between direct review and collateral review of convictions and sentences. Nor can I find anything in Barnes that abrogated the well-established rule that appellate courts *Page 788 
are not permitted to consider matters outside the record in the particular proceedings under review.
Rule 32, by its express terms, precludes collateral review of any nonjurisdictional ground raised or addressed at trial and on appeal, see Rule 32.2(a)(2) and (4), or that could have been, but was not, raised or addressed at trial or on direct appeal, see Rule 32.2(a)(3) and (5). Therefore, the federal constitutional issue, whether or not actually raised off the record by Wilson during her trial, was clearly not reviewable under Rule 32. The trial court reached the merits of Wilson's petition; it could have, and perhaps should have, denied the petition based on the grounds of preclusion in Rule 32.
The majority completely blurs the distinction between the Rule 32 proceedings and the direct appeal, reverses the trial court's ruling on Wilson's Rule 32 petition, and then addresses the federal constitutional issue raised on direct appeal based upon its finding from the record ofthe Rule 32 proceedings that that issue was properly preserved at trial. It is well settled that matters outside the record cannot be considered on appeal. In Etherton v. City of Homewood, 700 So.2d 1374 (Ala. 1997), the Alabama Supreme Court stated:
 "As a corollary, we are not permitted to consider matters `dehors the record.' Cooper v. Adams, 295 Ala. 58, 61, 322 So.2d 706, 708 (1975). This rule may be restated as follows: `(1) Argument in brief reciting matters not disclosed by the record cannot be considered on appeal. (2) The record cannot be impeached on appeal by statements in brief, by affidavits, or by other evidence not appearing in the record.' Id."
700 So.2d at 1378. See also McCain v. State, 611 So.2d 1123, 1126
(Ala.Crim.App. 1992) ("[t]his court is bound by the record, and the record may not be impeached by matters outside of the record"); andBamberg v. State, 611 So.2d 450, 452 (Ala.Crim.App. 1992) ("if in fact the off-the-record discussion did concern the issue the appellant now raises, it was the appellant's duty to make a complete record on appeal"). In United States Fidelity Guaranty Co. v. InternationalBrotherhood of Teamsters, 40 Ala. App. 452, 115 So.2d 42 (1959), the Court of Appeals noted:
 "On appeal we must look to the record for the evidence on the trial, and cannot consider evidence aliunde or matters dehors the record. Lindsey v. Barton, 260 Ala. 419, 70 So.2d 633; Byrd v. Aetna Life Ins. Co., 27 Ala. App. 1, 165 So. 109.
 "The general rule is that: `The record on appeal cannot be varied, added to, or explained by, a statement or certificate of the judge before whom the case was tried, the stenographer who took the evidence on the trial, or the clerk who made the record.' 4A C.J.S. Appeal and Error § 779, p. 648. The holding[s] of our courts on this question seem to be in accordance with the general rule that `. . . the appellate court will not ordinarily consider matters contained in such a statement or certificate which is not a part of the record.' 4A C.J.S. Appeal and Error § 1213, p. 1347. Montgomery Bank Trust Company v. State, 201 Ala. 447, 78 So. 825; Wright v. McCullough, 16 Ala. App. 575, 80 So. 149."
40 Ala. App. at 454-55, 115 So.2d at 44-45. In addition, in Jefferson v.State, 449 So.2d 1280, 1282 (Ala.Crim.App. 1984), this Court stated:
 "If counsel makes objections and secures rulings `off the record,' this court cannot consider those rulings. If the trial court hears objections and makes rulings in side-bar conferences only, then the court reporter must be a party *Page 789 
 to the side-bar conference if the actions of counsel are to be recorded. Our review is limited to matters of record."
An appellant can file a motion to supplement or to correct a record on appeal, see Rule 10(g), Ala.R.App.P. See, e.g., Fuller v. State,472 So.2d 452 (Ala.Crim.App. 1985), and Welch v. State, 455 So.2d 299
(Ala.Crim.App. 1984), both of which held that the failure to follow the procedure established in Rule 10 precludes appellate review of matters not appearing in the record. Wilson did not seek to supplement her record on direct appeal, as provided in Rule 10(g). Therefore, Wilson's claim on direct appeal that her life-without-parole sentence violates the Eighth Amendment to the United States Constitution is not properly before this Court.
To my knowledge, until the majority's holding in the present case, no rule of procedure or caselaw authorized, over an objection by the State, the use of a Rule 32 proceeding to establish a record, so that an issue, unpreserved at trial and unreviewable in the Rule 32 proceeding, could be addressed on direct appeal for the purpose of declaring duly enacted legislation unconstitutional.
Although I would not reach the federal constitutional issue,[19] I must comment on the majority's holding with respect to the Eighth Amendment. In Harmelin v. Michigan, 501 U.S. 957 (1991), the petitioner, who, like Wilson, had no prior criminal convictions, was convicted of possessing 672 grams of cocaine and was sentenced to a mandatory term of life imprisonment without parole. The petitioner argued that his sentence was unconstitutionally "cruel and unusual" for two reasons: first, because it was "significantly disproportionate" to the crime he committed; and second, because the sentencing judge was statutorily required to impose it, without taking into account the particularized circumstances of the crime and of the criminal. A majority of the United States Supreme Court rejected both of those arguments and affirmed the petitioner's sentence. Although a proportionality principle of an undetermined scope survived Harmelin, it is not at all clear to me, based upon my reading of the different viewpoints expressed by the Justices in that case, that a majority of that Court, as presently constituted, would declare unconstitutional the legislation at issue here. In other words, I have a doubt, which I perceive to be reasonable, that the statute at issue in the present case is unconstitutional as applied to the facts presented. Although I deem the question to be a close one, the factual distinctions the majority makes between Wilson in this case and the petitioner in Harmelin are just not sufficient, at least in my mind, to eliminate that doubt.
A statute is presumed to be constitutional, and I must be convinced beyond a reasonable doubt that an act of the Alabama Legislature violates either the federal constitution or the state constitution before I will vote to hold it unconstitutional. See, e.g., Donley v. City of MountainBrook, 429 So.2d 603, 607 (Ala.Crim.App. 1982) ("This Court will not hold [statutes] unconstitutional unless convinced beyond a reasonable doubt of their unconstitutionality.") "`[O]ur solemn duty [is] to uphold a law, which has received the sanction of the Legislature, unless we are convinced beyond a reasonable doubt of its unconstitutionality.'" Exparte Melof, 735 So.2d 1172, 1179 (Ala. 1999), quoting Yeilding v. Stateex rel. Wilkinson, 232 Ala. 292, 298, *Page 790 167 So. 580, 585 (1936). My views in this respect were best expressed by Chief Justice Gardner, writing for the Alabama Supreme Court many years ago in Alabama State Federation of Labor v. McAdory, 246 Ala. 1,18 So.2d 810 (1944):
 "At the outset reference may be made, as is often done, to the principles by which courts are guided when it is sought to strike down as violative of the constitution a legislative act. Uniformly, the courts recognize that this power is a delicate one, and to be used with great caution. It should be borne in mind, also, that legislative power is not derived either from the state or federal constitutions. These instruments are only limitations upon the power. Apart from limitations imposed by these fundamental charters of government, the power of the legislature has no bounds and is as plenary as that of the British Parliament. It follows that, in passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond a reasonable doubt that it is violative of the fundamental law. State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 186 So. 487, 121 A.L.R. 283.
 "Another principle which is recognized with practical unanimity, and leading to the same end, is that the courts do not hold statutes invalid because they think there are elements therein which are violative of natural justice or in conflict with the court's notion of natural, social, or political rights of the citizen, not guaranteed by the constitution itself. Nor even if the courts think the act is harsh or in some degree unfair, and presents chances for abuse, or is of doubtful propriety. All of these questions of propriety, wisdom, necessity, utility, and expediency are held exclusively for the legislative bodies, and are matters with which the courts have no concern. This principle is embraced within the simple statement that the only question for the court to decide is one of power, not of expediency or wisdom. 11 Am.Jur pp. 799-812; A. F. of L. v. Reilly District Court of Colorado, 7 Labor Cases No. 61,761."
246 Ala. at 9-10, 18 So.2d at 814-15.
From a personal standpoint, I share the majority's concern for the plight in which Wilson, a young mother of two children, finds herself. However, as an appellate judge, in the absence of a clear showing that a statute is unconstitutional, I do not have the luxury or the constitutional authority to question the propriety, wisdom, necessity, utility, or expediency of a duly enacted statute. To me, the majority's decision is impermissibly based on a concept of natural justice and on the perception that the statute conflicts with general notions of natural or social rights of the citizen — rights not afforded specific constitutional protection. The majority believes that it has found a clear constitutional path to lead it to the correct result. I assume that a higher court will ultimately determine whether it has. I am concerned, however, that the path the majority has taken in this case will inevitably lead this Court into making subjective personal value determinations in other cases — determinations it should not make. Will the statute be held unconstitutional as applied to all first-time traffickers, male or female, married or single, with or without children, young or old, wealthy or poor, or will it, as the majority suggests, be held unconstitutional only as applied to facts such as those *Page 791 
presented here — to young mothers of children? What will the majority do in the next case, which will surely come, where relief from a sentence of life imprisonment without parole is sought by a person who has violated § 13A-12-231, but whose overall situation in life does not pull quite so strongly on a sensible person's heartstrings? What are the implications of this decision in other contexts where sentences are challenged as being excessive under the Eighth Amendment? These are, of course, rhetorical questions, at least for now; however, they are difficult questions that, as a result of the majority's decision today, will someday have to be answered.
Finally, I note, as does Judge Cobb in footnote 1 of the majority opinion, that Apprendi v. New Jersey, 530 U.S. 466 (2000), may be implicated here. However, without the benefit of any argument by the parties, because of the majority's holding with respect to the Eighth Amendment issue in this case, and given the majority's holding in Poolev. State, [Ms. CR-99-1200, August 31, 2001] ___ So.2d ___ (Ala.Crim.App. 2001), I decline to address the legality of Wilson's sentence in light ofApprendi.
[19] Although the majority mentions Wilson's claim under Art. I, § 15, of the Alabama Constitution, it appears to me that its holding is based solely on the federal constitution.